**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| JASON C. SCHNEIDER, JOSEPH F. IRWIN, JAMES FRIEDLEIN, JASON WEAVER, SEAN HICKS, MICHAEL ROBINSON, JAMES ARMSTRONG, MICHAEL GAYDESKI, DAVID R. MENDOZA, JAMES WALLS, JOHN MORRIS PRITCHARD III, CONNOR PENN, ZACHARY WALES, and CAMERON DAVIES, individually and on behalf of all others similarly situated, | § § § § § § § § § § § § | Case No: 22-293  Religious Freedom Restoration Act |
| *Plaintiffs*, | § § § | |
| v. | § § | |
| LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, UNITED STATES DEPARTMENT OF DEFENSE, CARLOS DEL TORO, in his official capacity as United States Secretary of the Navy, and DAVID H. BERGER, Commandant of the United States Marine Corps, | § § § § § § § § § | |
| *Defendants*. | § § | |

**CLASS ACTION COMPLAINT**

Plaintiffs Jason C. Schneider, Joseph F. Irwin, James Friedlein, Jason Weaver, Sean Hicks, Michael Robinson, James Armstrong, Michael Gaydeski, David R. Mendoza, James Walls, John Morris Pritchard III, Connor Penn, Zachary Wales, and Cameron Davies (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, hereby complain as follows and allege against Defendants Lloyd J. Austin, III, in his official capacity as United States Secretary of Defense, the United States Department of Defense,

Carlos Del Toro, in his official capacity as United States Secretary of the Navy, and David H. Berger, as Commandant of the United States Marine Corps:

## INTRODUCTION

1.     This is a class action brought to remedy Defendants' discriminatory policies that substantially burden the religious exercise of Plaintiffs and other service members of the United States Marine Corps ("Marine Corps" or "Marines") who object to receiving a COVID-19 vaccination based on their sincerely held religious beliefs.

2.     This action is based upon the United States Constitution, the Religious Freedom Restoration Act of 1993, and the Administrative Procedure Act, concerning the denial of Plaintiffs' fundamental right to the free exercise of religion.

3.     Defendants have mandated that all members of the Marines receive a COVID-19 vaccine or be involuntarily separated.  In theory, Defendants offer medical, administrative, and religious accommodations to that mandate.  But in practice, only service members with medical or administrative reasons for an exemption from the mandate are accommodated.  Religious accommodation requests ("RARs") are universally denied unless the requester is already imminently leaving the Marines.

4.     Plaintiffs each have sincere religious beliefs that prohibit them from receiving the COVID-19 vaccine.  Each submitted an RAR, and each request has been denied.  Even before the initial denials, though, Defendants began their discriminatory course of conduct against Plaintiffs and others requesting religious exemptions.  Plaintiffs have lost promotions that had already been announced, experienced the reversal of

assignments and orders that would advance their careers, received adverse performance evaluations, received official discipline, and been barred from training opportunities, to name only a few kinds of the harm they have already endured.

5.     By contrast, medical and administrative accommodation requesters received no such punitive treatment.  Unvaccinated individuals with the same duties as Plaintiffs have not been the subjects of adverse action, simply because their requests were secular rather than religious.

6.     Defendants' policies and practices have deprived and will continue to deprive Plaintiffs of their rights and guarantees under the United States Constitution and federal law.  Defendants committed each act alleged herein under the color of law and authority.

7.     This lawsuit is brought as a class action to redress Defendants' violations of the United States Constitution, the Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat. 1488 (codified at 42 U.S.C. § 2000bb *et seq.*) ("RFRA"), and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"), on behalf of the Named Plaintiffs and all other similarly situated members of the Marines Corps.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, 28 U.S.C. § 1346 because this is a civil action against the United States, 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed

to Plaintiffs, and 42 U.S.C. § 2000bb-1(c) because Plaintiffs' religious exercise has been burdened by Defendants.

9.      This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65; and costs and attorneys' fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988(b).

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(A) because Defendants are officers of the United States and agencies of the United States, and because at least one Named Plaintiff is domiciled in the Southern District of Texas. Specifically, the Defendants' COVID-19 Vaccine Mandate and the related policies that discriminate against Plaintiffs' sincerely held religious beliefs were implemented against, and caused injury to, at least one Named Plaintiff whose permanent residence is in this District.   Defendants' policies were also implemented against and caused injury to members of the class domiciled or serving in this District.

## PARTIES

### A.    Named Plaintiffs

11.     Named Plaintiff Jason C. Schneider is a Lieutenant Colonel in the Marines. He was selected for command of a battalion in July 2021, an order that was canceled shortly after the Marines Corps became aware that he was challenging the mandate to get a vaccine. He is presently assigned to Marine Corps Combat Development Command at the Marine

Corp Base in Quantico, Virginia, and permanently resides in College Station, Texas, which is in the Southern District of Texas.

12.     Named Plaintiff Joseph F. Irwin is a Lieutenant Colonel in the Marines.  He is stationed at the Marine Forces Special Operations Command at Camp Lejeune, in North Carolina.

13.     Named Plaintiff James Friedlein is a Lieutenant Colonel in the Marines.  He presently serves as a Type Model Series Lead with Marine Aircraft Group 41 at the Naval Air Station Joint Reserve Base in Fort Worth, Texas, and permanently resides in Aledo, Texas.

14.     Named Plaintiff Jason Weaver is a Major in the Marines.  He is presently assigned to Marine Aerial Refueler Transport Squadron 234 at Naval Air Station Fort Worth in Fort Worth, Texas, as a KC-130J Aircraft Commander, and also permanently resides in Aledo, Texas.

15.     Named Plaintiff Sean Hicks is a Major in the Marines.  He is presently assigned to Commander Naval Air Forces, Atlantic, at Naval Support Activity Hampton Roads in Norfolk, Virginia.  He permanently resides in Amarillo, Texas.

16.     Named Plaintiff Michael Robinson is a Major in the Marines.  He is presently assigned as Future Operations Officer for Marine Aircraft Group 41 at the Air National Guard Base in Minneapolis, Minnesota, and resides in Otsego, Minnesota.

17.     Named Plaintiff James Armstrong is a 1st Lieutenant in the Marines.  He is a Student Pilot who resides in Port Angeles, Washington, and is currently stationed at Marine Corps Air Station New River, near Jacksonville, North Carolina.

18.     Named Plaintiff Michael L. Gaydeski is a Chief Warrant Officer 5 in the Marines.  He is presently assigned to Headquarters Squadron, Marine Corps Air Station in Cherry Point, North Carolina, and permanently resides in Forks, Washington.

19.     Named Plaintiff David R. Mendoza is a Warrant Officer in the Marines.  He is presently assigned to a Communications Training Battalion in California, and permanently resides in Denver City, Texas.

20.     Named Plaintiff James Walls is a Master Sergeant in the Marines.  He is presently assigned to the 3d Littoral Combat Team in Hawaii, and permanently resides in Port Arthur, Texas.

21.     Named Plaintiff John Morris Pritchard III is a Gunnery Sergeant in the Marines.  He serves in Marine Corps Intelligence Activity, is currently assigned to Marine Corps Base Quantico in Virginia, and also permanently resides in Virginia.

22.     Named Plaintiff Connor Penn is a Staff Sergeant in the Marines.  He is a Training Coordinator, who currently resides and is stationed in Fort Worth, Texas.

23.     Named Plaintiff Zachary Wales is a Sergeant in the Marines.  He is an intelligence analyst presently assigned to Goodfellow Air Force Base in Texas, and is a permanent resident of Louisiana.

24.     Named Plaintiff Cameron Davies is a Corporal in the Marines.  He is assigned to 1st Reconnaissance Battalion at Camp Pendleton in California, and permanently resides in Bellevue, Washington.

**B.      Defendants**

25.      Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. Secretary Austin oversees and leads the United States Department of Defense, a Cabinet-level agency.  Secretary Austin issued a memorandum on August 24, 2021, requiring the United States Armed Forces to vaccinate all service members, including Plaintiffs. Defendant Austin is sued in his official capacity.

26.      Defendant United States Department of Defense ("DoD") is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the vaccination policies at issue herein.

27.      Defendant Carlos Del Toro is the United States Secretary of the Navy.  As Secretary of the Navy, Secretary Del Toro oversees and leads the Department of the Navy ("DoN" or "Navy"), a sub-Cabinet level agency.  Secretary Del Toro reports to Secretary Austin, and is tasked with implementing Secretary Austin's vaccination policy, requiring the DoN to vaccinate all service members, including Plaintiffs.  Secretary Del Toro issued a directive on August 24, 2022, to implement Secretary Austin's memorandum.  Secretary Del Toro is sued in his official capacity.

28.      Defendant David H. Berger is the Commandant of the United States Marine Corps.  As Commandant, General Berger issued a directive on September 1, 2021, requiring Plaintiffs to be vaccinated, pursuant to the policy orders issued by Secretary Austin and Secretary Del Toro.  General Berger administratively reports to Secretary Del Toro.  General Berger is sued in his official capacity.

## FACTUAL BACKGROUND

### A.     Plaintiffs' Sincerely Held Religious Beliefs

29.     Plaintiffs are service members of the United States Marine Corps who each object to receiving a COVID-19 vaccination based on their sincerely held religious beliefs.

30.     Plaintiffs are part of the approximately 5 percent of Marine Corps service members who have not been fully vaccinated against COVID-19.

31.     Plaintiffs' religious beliefs generally fall into the following categories: (1) conviction that the leading of the Holy Spirit is what makes them apprehensive about taking the COVID-19 vaccine; (2) opposition to abortion and the use of fetal cell lines in development of the vaccine; (3) belief that the mRNA technology utilized in some COVID-19 vaccines usurps God's creation of the human genome; (4) belief that their God-given immunity is sufficient to protect them against COVID-19; and (5) that the body is a temple, and taking the vaccine would defile that temple.

32.     Plaintiffs do not believe that staying true to their faith means exposing themselves or others to unnecessary risk.  Quite the contrary, they view life—whether their own or that of their fellow service members—as sacred and deserving protection. Plaintiffs, therefore, do not object to safety measures that reduce the transmission of COVID-19 in the workplace.  Indeed, Defendants employed such measures during the prior year and a half before COVID-19 vaccines were made widely available.

### B.     The President's Orders to Vaccinate the Armed Forces

33.     On or about July 29, 2021, the President directed the DoD to add the COVID-19 vaccine to its list of required immunizations for all service members.  *See FACT SHEET:*

*President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant*, WHITE HOUSE BRIEFING ROOM (July 29, 2021), https://tinyurl.com/29n632a7 ("Today, the President will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military.").

34.     The President's directive was issued over seven months after COVID-19 vaccines became available.[1]

**C.     The DoD's COVID-19 Vaccine Mandate**

35.     On August 24, 2021, Defendant Austin issued a memorandum entitled *Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members* (the "DoD COVID-19 Vaccine Mandate").[2]

36.     The DoD COVID-19 Vaccine Mandate directs the DoD to vaccinate all active duty and reserve service members against COVID-19.  It states that service members who previously contracted COVID-19, and now have active antibodies against the virus, are not considered fully vaccinated and are still required to receive a vaccination against COVID-19.  It provides that the DoD will only use or administer COVID-19 vaccines that

---

[1] *Emergency Use Authorization (EUA) for an Unapproved Product: Rev. Mem.*, U.S. Food & Drug Admin. (Dec. 11, 2020), https://www.fda.gov/media/144416/download (EUA for Pfizer vaccine); *Emergency Use Authorization (EUA) for an Unapproved Product: Rev. Mem.*, U.S. Food & Drug Admin. (Dec. 18, 2020), https://www.fda.gov/media/144673/download (EUA for Moderna vaccine); *Emergency Use Authorization (EUA) for an Unapproved Product: Rev. Mem.*, U.S. Food & Drug Admin. (Feb. 27, 2021), https://www.fda.gov/media/146338/download (EUA for Johnson & Johnson vaccine).

[2] Available at https://tinyurl.com/DODCovidMandate.

are fully licensed by the United States Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance. It also provides that service members who previously received a vaccination against COVID-19 under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing are considered fully vaccinated.   Additionally, it provides that service members actively participating in COVID-19 clinical trials are exempted from that mandate until the trial is complete.

37.    Aspects of the DoD COVID-19 Vaccine Mandate seems irreconcilable with other DoD policies.   The Secretary of the Navy has directed that DoD policy on immunizations states that medical commanders, commanding officers, and command surgeons will "ensure patients are evaluated for preexisting immunity" and provides that "evidence of immunity based on serologic tests, documented infection, or similar circumstances" may be the basis for a medical exemption.[3] All that notwithstanding, Secretary Austin's memorandum states that "those with previous COVID-19 infection are not considered fully vaccinated," without attempting to explain this departure from established policy.

38.    The DoD COVID-19 Vaccine Mandate states that the DoD will implement the DoD COVID-19 Vaccine Mandate consistent with DoD Instruction 6205.02, "DoD Immunization Program," dated July 23, 2019.[4] The DoD COVID-19 Vaccine Mandate

---

[3]*See Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases*, Navy Bureau of Medicine & Surgery Instruction ("BUMEDINST") 6230.15B ¶¶ 1-4, 2-6 https://tinyurl.com/3fack7um.

[4] James N. Stewart, *DOD Instruction 6205.02: DoD Immunization Program*, OFF. UNDER SEC'Y DEF. PERS. READINESS (July 23, 2019), https://tinyurl.com/5f9crvu2.

states that the Military Departments, including the Marines, should use existing policies and procedures to manage mandatory vaccination of service members to the extent practicable.  It states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

39.     Defendants issued subsequent guidance stating that service members who are not fully vaccinated by established deadlines will immediately suffer adverse consequences as directed by their service components.  The adverse consequences may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists and assignments, receipt of adverse performance evaluations, inability to attend certain military training and education schools, removal from assigned job duties, inability to retire in good standing, loss of special pay, placement in a non-deployable status, involuntary placement into the Individual Ready Reserve without access to military benefits, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

40.     According to the Marine Corps' most recent statistics, 95 percent of active duty Marines are now vaccinated, and 95 percent of Marines in the Reserves are likewise now vaccinated.[5]

---

[5]   *Monthly COVID-19 Update*, USMC (Aug. 4, 2022), available at https://tinyurl.com/yc7jtjek.

11

### D.     The Marines' COVID-19 Vaccine Mandate

41.     On the same day that Secretary Austin issued his directive, Secretary Del Toro issued ALNAV 062/21,[6] *Mandatory Vaccination Policy*, to all DoN service members (i.e., United States Navy and United States Marine Corps), implementing the Defense Secretary's directive.

42.     On September 1, 2021, General David H. Berger, Commandant of the Marine Corps, issued Marine Administrative Message ("MARADMIN") 462/21 to all Marine Commanders, entitled *Mandatory Covid-19 Vaccination of Marine Corps Active and Reserve Components* (the "Marines Vaccine Mandate") (collectively, the DoD COVID-19 Vaccine Mandate and the Marines COVID-19 Vaccine Mandate are the "COVID-19 Vaccine Mandates").  The Marines COVID-19 Vaccine Mandate incorporates by reference the DoD COVID-19 Vaccine Mandate's provisions.

43.     The Marines COVID-19 Vaccine Mandate directs all Marine Corps commanders to ensure that "all Marine Corps active and reserve component … service members shall be fully vaccinated against COVID-19, unless medically or administratively exempt."  MARADMIN Number 462/21 ¶ 3.a (Sept. 1, 2021), available at https://www.marines.mil/News/Messages/Messages-Display/Article/2761259/mandatory-covid-19-vaccination-of-marine-corps-active-and-reserve-components/.  It further directs that active duty Marines must be fully vaccinated by December 2, 2021, and reservists must be fully vaccinated by January 1, 2022.  The Marines COVID-19 Vaccine Mandate states

---

[6] Available at https://tinyurl.com/ALNAV06221.

that "FDA licensed vaccine(s) are the only vaccine(s) that can be mandated for DoD personnel at this time.  However, service members who voluntarily receive a complete initial series of an FDA Emergency Use Authorization (EUA) COVID-19 vaccine, or a vaccine included in the World Health Organization (WHO) Emergency Use Listing, will meet the requirements of … this MARADMIN." *Id.* ¶ 3.b.

44.    Although DoD policy states that medical commanders, commanding officers, and command surgeons will "[e]nsure patients are evaluated for preexisting immunity," BUMEDINST 6230.15B ¶ 1-4(c)(4), and states that "evidence of immunity based on serologic tests, documented infection, or similar circumstances" may be the basis for a medical exemption, *id.* ¶ 2-6(a)(1)(b), the Marines COVID-19 Vaccine Mandate states that "history of COVID-19 disease and/or positive serology [i.e., testing positive for natural immunity antibodies] is not a valid exemption from COVID-19 vaccination," MARADMIN 462/21 ¶ 3.j.5.

**E.    DoD and Marine Corps Regulations Recognize Religious and Medical Accommodations for Immunizations under RFRA and the Free Exercise Clause Generally.**

45.    Department of Defense Instruction ("DODI") 1300.17, Religious Liberty in the Military Services,[7] dated September 1, 2020, establishes DoD policy in furtherance of RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United States.  DODI 1300.17 provides that it is DoD policy that "[s]ervice members have

---

[7] Matthew P. Donovan, *DoD Instruction 1300.17: Religious Liberty in the Military Services*, OFF. UNDER SEC'Y DEF. PERS. & READINESS (Sept. 1, 2020), https://tinyurl.com/4ym5zyfk ("DODI 1300.17").

13

the right to observe the tenets of their religion or to observe no religion at all, as provided in this issuance." DODI 1300.17 further provides that, "[i]n accordance with Section 533(a)(1) of Public Law 112-239, as amended, the DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A Service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment."

46. DODI 1300.17 additionally provides that "[a]ccommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance with RFRA, if such a military policy, practice or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if: (1) The military policy, practice, or duty is in furtherance of a compelling governmental interest. (2) It is the least restrictive means of furthering that compelling governmental interest."

47. Marine Corps Order ("MCO") 1730.9, Accommodation of Religious Practices in the Marine Corps,[8] issued July 12, 2021, implements DODI 1300.17 for the accommodation of religious practices in the Marines Corps. MCO 1730.9 provides that "the Marine Corps will accommodate individual expressions of sincerely held beliefs … which do not have an adverse impact on a compelling government interest." *Id.* ¶ 2. The

---

[8] *Marine Corps Order 1730.9: Accommodation of Religious Practices in the Marine Corps*, COMMANDANT OF THE MARINE CORPS (July 12, 2021), https://www.marines.mil/News/Publications/MCPEL/Electronic-Library-Display/Article/2691743/mco-17309/ ("MCO 1730.9").

Order tracks the language of RFRA and the policy documents it references, acknowledging that "in furtherance of a compelling government interest" and "the least restrictive means of furthering that compelling governmental interest." *Id.*

48.     MCO 1730.9 explicitly provides—as RFRA demands—that the Marines "will accommodate practices of a Marine based on a sincerely held religious belief when such requests do not adversely affect a Marine or unit's mission accomplishment capabilities." *Id.* ¶ 3(a)(1).  In the specific context of vaccinations, the Order says that the justification for vaccinations is "to protect against disease due to increased exposure potential." *Id.* ¶ 3(f)(1).

49.     The Order's standard of review likewise codifies RFRA's robust protections. For one thing, "[t]he Marine Corps will approve an individual request for accommodation unless such approval erodes a compelling government interest." *Id.* ¶ 4(b)(2).  For another, the decision must turn on "whether there is a less restrictive alternative means of meeting the compelling government interest while providing for a religious accommodation." *Id.* The evaluating authorities "must consider every request on a case-by-case basis." *Id.*

50.     MCO 1730.9 also protects Marines from retaliation for exercising their rights under the Constitution and RFRA.  The Order specifies that the "expression of sincerely held beliefs may not be used as the basis for any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment." *Id.* ¶ 4(f)(5).

**F.     Defendants' Policy of Refusing to Grant Religious Exemptions and of Retaliation Against Religious Exemption Requests**

51.     Defendants deny virtually all RARs, indicating that this is a de facto policy. Plaintiffs' common experience demonstrates that these are not individualized assessments that seriously consider each Marine with an open mind to decide for each claimant whether to grant or deny the request.  Instead, it is the Defendants' policy ("Policy") that, unless a Marine is already slated to leave the Corps, the Defendants' will deny requests that raise a religious objection.  Thus, despite the guarantees of the Constitution and RFRA, codified in DODI 1300.17 and other published policies, the purportedly individualized, case-specific considerations are nothing but pieces of paper when they are raised against Defendants' COVID-19 Vaccine Mandates.  That is what the Northern District of Texas found.  *See U.S. Navy SEALs 1–26 v. Biden*, 2022 WL 34443, at *5–6 (N.D. Tex. Jan. 3, 2022).  That court was correct.  Defendants' Policy, unless a Marine is about to leave anyway, is to deny religious exemptions to the Vaccine Mandate, regardless of any individual considerations.

52.     The facts surrounding Plaintiffs' seeking religious exemptions are similar. Each Plaintiff was ordered to receive a COVID-19 vaccine.  Each Plaintiff then fulfilled the regulatory requirements for seeking an RAR, consistent with DODI 1300.17 and MCO 1730.9. Plaintiffs filed the proper forms.  They interviewed with a military chaplain who determined that their beliefs were sincere.  The requests for accommodation were endorsed by their commanders and sent up the chain of command.  These requests included various types of religiously informed beliefs.  Some are exclusively expressions of religious faith,

such as that all life is sacred to God, or the body is a temple of the Holy Spirit.  Some religious beliefs apply faith to specific facts, such as the belief that life begins at conception, or a sense of religious conviction that God does not want that person to inject a foreign substance like the vaccine into God's temple.  Other religiously informed beliefs include objections to the use of cells derived from fetuses.  During this process, most Plaintiffs were counseled by their commanders regarding the consequences of not taking the vaccine.  For various reasons, all the requests for RAR containing any combination of these facts were denied.  Those Marines appealed through the prescribed process.  For most, those appeals were likewise denied or, for some, are still pending.

53.     **Plaintiff Jason C. Schneider** is a Lieutenant Colonel in the Marines, who is domiciled in Brazos County, in the Southern District of Texas, and is currently stationed at the Marine Corps Combat Development Command in Quantico, Virginia.

54.     Lieutenant Colonel Schneider submitted an RAR on October 15, 2021, based on his sincere religious beliefs that he cannot knowingly support, advance, or contribute to the use of aborted stem cells for medical purposes, and also that messenger ribonucleic acid (mRNA) vaccines manipulate and defile his body, which is a temple.  Schneider was interviewed by his command chaplain, who determined that his beliefs were sincere.

55.     Schneider's RAR was denied on November 18, 2021.  The denial stated that the government had a compelling interest in mission accomplishment and that there are no less-restrictive means of accomplishing that purpose.

56.     Schneider appealed, but his appeal was denied by the Assistant Commandant of the Marine Corps, General Eric M. Smith.  The denial reiterated the government's

interests and stated that receiving the vaccine would not burden Schneider's sincere religious beliefs because fetal stem cells were not used in manufacturing the vaccine and because Schneider's acceptance of previous vaccines evidenced that his beliefs were not burdened.

57.    Schneider was ordered by his commanding general, Karsten S. Heckl, to receive a COVID-19 vaccine.  When he did not do so, he was counseled verbally and in writing for violating Article 92 of the Uniform Code of Military Justice (UCMJ).

58.    Schneider was notified that he was required to "show cause for retention" at a Board of Inquiry.  As a result of his disciplinary actions, Schneider was rendered ineligible for his upcoming command, promotion, retirement, and all other normal career progressions.  On May 11, 2022, the members of the Board of Inquiry recommended that Schneider be involuntarily separated.  His commanding general has endorsed that recommendation, and he could be separated at any time.

59.    **Plaintiff Joseph F. Irwin** is a Lieutenant Colonel in the Marines, stationed at the Marine Forces Special Operations Command at Camp Lejeune, in North Carolina.

60.    Lieutenant Colonel Irwin submitted an RAR on September 10, 2021, based on his sincere religious beliefs, which prohibit him from receiving any vaccine which was tested or produced using aborted fetal cell lines, and also because he regards his body as a temple of God that would be dishonored by the COVID-19 vaccine.  A chaplain determined that Irwin's beliefs were sincere.

61.     That RAR was denied on October 26, 2021.  That denial stated that it was necessary for a compelling public interest, and made no mention of natural immunity or herd immunity.

62.     Irwin appealed, but was denied by General Eric M. Smith.  The denial claimed that taking the vaccine would not substantially burden Irwin's faith, partly because the purported facts regarding fetal cells were allegedly inaccurate, and partly because Irwin's previously accepting other vaccines means that this vaccine cannot burden his faith.  Smith also claimed that the vaccine was necessary even if the burden was present, because Smith asserted that the vaccine is the most effective tool for fighting COVID-19.  Smith claimed that not getting vaccinated would therefore pose a risk to military readiness.

63.     On April 5, 2022, Major General James Glynn counseled Irwin as his commander that Irwin had violated Articles 90 and 92 of the UCMJ.

64.      Irwin then sought to retire effective June 1, 2023, but was informed by Manpower and Reserve Affairs on May 4, 2022, that his retirement request would not be considered because of his anticipated separation from the Marines due to his refusal to get vaccinated.  Either way, this would prevent him from completing his twentieth "Good Year" of military service and prevent him from receiving his retirement despite almost 20 years of service in the Marines.

65.     **Plaintiff James Friedlein** is a Lieutenant Colonel in the Marines serving as a Type Model Series Lead at the Naval Air Station Joint Reserve Base in Fort Worth, Texas.

66.     Lieutenant Colonel Friedlein submitted an RAR on October 14, 2021, based on his sincere religious belief that his body is a "temple of the Holy Spirit" and that he must honor God with his body by abstaining from injecting synthetic genetic material (including mRNA) and aborted fetal tissue into his body.  Friedlein's sincere beliefs also oppose the use of fetal cell lines for vaccine production.  A chaplain determined that Friedlein's religious beliefs are sincere.

67.     Friedlein's RAR was denied on November 1, 2021, by Deputy Commandant for Manpower and Reserve Affairs, Lieutenant General David A. Ottignon.  That denial stated that vaccines were a critical component of the government's compelling interest in individual and unit readiness and that there were no less restrictive means for accomplishing that interest.

68.     Friedlein appealed, but his appeal was denied on May 18, 2022, by the Assistant Commandant of the Marine Corps. Friedlein was given ten working days to receive a COVID-19 vaccine.

69.     The denial of Friedlein's appeal stated that the vaccination requirement did not substantially burden Friedlein's sincere religious beliefs because fetal tissue and fetal cell lines were not used in the manufacture of the Pfizer vaccine.  The denial also stated that the Marine Corps had seen "increasingly convincing data" that unvaccinated individuals were more likely to experience adverse health outcomes and undermine a unit's ability to accomplish its mission.  The denial did not provide any medical data to support this claim.

70.     As a result of his failure to receive the COVID-19 vaccine, Friedlein was listed in the Officers Disciplinary Notebook on June 23, 2022.  He anticipates that a charge of misconduct and a Board of Inquiry will soon follow.  Being discharged just prior to his 20 years of honorable service would render Friedlein ineligible for his retirement pension and benefits.

71.     Friedlein attempted to retire on March 24, 2022, but his request was denied because of his pending RAR.  Friedlein resubmitted his request on June 2, 2022.

72.     **Plaintiff Jason Weaver** is a Major assigned to Marine Aerial Refueler Transport Squadron 234 at Naval Air Station Fort Worth in Fort Worth, Texas, as a KC-130J Aircraft Commander.

73.     Major Weaver submitted an RAR on November 15, 2021, based on his sincere religious beliefs that his body is a temple of the Lord and that accepting a vaccine benefitting from the use of aborted fetal cell tissue would be a permanent altering of the Lord's temple.  He also had antibody tests revealing prior COVID-19 infection and the presence of antibodies that confer natural immunity.  Weaver was interviewed by a chaplain, who determined that Weaver's religious beliefs were sincere.

74.     Weaver's RAR was denied by a letter from Lieutenant General David A. Ottignon, dated December 14, 2021, which Weaver received on December 20, 2021.  The denial stated that vaccination was necessary for mission accomplishment, military readiness, and protection of the health of the force.

75.     Weaver appealed his denial on January 7, 2022, and is still awaiting a response.

76.     Weaver was replaced as Executive Officer ("XO"—second in command) of his squadron because of his refusal to obtain the COVID-19 vaccine.  Weaver is no longer able to participate in overnight missions and was removed from a training detachment with his squadron in July 2022 because of his not receiving a COVID-19 vaccine.  He anticipates further detrimental impact on his military career, such as entry in the Officers Disciplinary Notebook and a hearing before a Board of Inquiry.

77.     **Plaintiff Sean Hicks** is a Major in the Marines assigned to Commander Naval Air Forces, Atlantic at Naval Support Activity Hampton Roads in Norfolk, Virginia.

78.     Major Hicks submitted an RAR on September 20, 2021, based on his sincere religious beliefs regarding the sanctity of human life and his opposition to knowingly taking part in a medical treatment derived from the use of aborted fetal tissue.  Hicks was interviewed by a chaplain, who found that Hicks's religious beliefs are sincere.

79.     That RAR was denied on October 28, 2021, by David Ottignon.  The denial stated that the government had a compelling interest in mission accomplishment and that there was no less-restrictive way of accommodating Hicks's request that ensures military readiness and the preservation of the health of the force.  The denial did not provide any details or supporting documents explaining why less restrictive measures could not be used.

80.     Hicks appealed the denial of his RAR, but his appeal was denied by the Assistant Commandant of the Marine Corps on May 25, 2022.  The denial stated that the vaccine requirement did not substantially burden Hicks's sincere religious belief, that people who remain unvaccinated are more likely to experience adverse health outcomes,

and that less restrictive means do not achieve the compelling interest in readiness and health and safety.

81.     On May 26, 2022, Hicks was ordered by his commanding officer to obtain a COVID-19 vaccine by June 6, 2022.

82.     Hicks did not receive the vaccine and as a result, he was officially counseled for an Article 92 violation of the UMJC (failure to follow an order or regulation).  Hicks's commanding officer also began the process for entering Hicks in the Officer Disciplinary Notebook, which renders him ineligible for command, promotion, deployments, and all other normal career progressions, including retirement.  Entry in the ODN will also initiate a Board of Inquiry process which will determine if Hicks will be involuntarily discharged from the Marines Corp after 16 years of faithful service.

83.     **Plaintiff Michael Robinson** is a Major in the Marines, presently assigned as Future Operations Officer for Marine Aircraft Group 41 at the Air National Guard Base in Minneapolis, Minnesota.

84.     On October 25, 2021, Major Robinson submitted an RAR to be exempted from the COVID-19 vaccine requirement based on his sincere religious beliefs that receipt of the vaccine would be a violation of conscience, which is the voice of God, and that his salvation would thereby be burdened by sin.  Robinson was interviewed by a chaplain, who determined that his religious beliefs are sincere.

85.     Robinson's RAR was denied on November 20, 2021, by Lieutenant General David Ottignon.  The denial stated that the government had a compelling interest in mission accomplishment that could not be accomplished with the requested exemption.

86.     Robinson appealed the denial of his RAR to the Commandant of the Marine Corps on December 14, 2021.  That appeal was denied on May 6, 2022.  The reasons cited in the denial were military readiness, unit cohesion, good order and discipline, and the health and safety of the force.

87.     Robinson did not receive the COVID-19 vaccine, and as a result he received counseling for an Article 92 violation (disobeying a lawful order or regulation).  A report of misconduct was also submitted to the Judge Advocate Division.  Robinson was removed from his position as Site Commander.

88.     **Plaintiff James Armstrong** is a 1st Lieutenant in the Marines, stationed at a Training Squadron at the Marine Corps Air Station New River in North Carolina.

89.     1st Lieutenant James Armstrong submitted an RAR on October 13, 2021, based on his sincere religious beliefs, that innocent human life is sacred to God from conception to natural death, and that any vaccine that benefits in any way from an abortion, no matter how remote in time, must be avoided.  A chaplain determined that Armstrong's beliefs were sincere.

90.     That RAR was denied on December 6, 2021, by David Ottignon.  That denial stated that it was necessary for a compelling public interest of mission accomplishment, and that there was no alternative means less restrictive than the vaccine to accomplish that interest.

91.     Armstrong appealed, but was denied by the Commandant of the Marine Corps on April 15, 2022.  He was ordered to complete a vaccination series of the Pfizer BioNTech COVID-19 vaccine by May 17, 2022.

92.    Deputy Commandant Ottignon's denial claimed that fetal cell lines were not used in the manufacturing of the vaccines, notwithstanding the reality that documents Armstrong read—including literature from Pfizer regarding its own vaccine—said otherwise.  The denial also said that Armstrong's religious faith would not be substantially burdened because he had previously received vaccines during his years of service in the Marines.  Armstrong's submissions reflect that his religious pro-life beliefs have been constant, and that previously he had not been aware of the connection to abortion when he had received certain vaccines in the past.  Ottignon continued that there was "increasingly convincing data" that unvaccinated service members were more likely to experience more problems from COVID than the vaccinated, and more likely to spread the disease, thus putting the rest of the force at risk.  This is all stated without any evidentiary support, medical data shared, or supporting information.

93.    Armstrong also informed his command on April 28, 2022, that there were no FDA-approved COVID-19 vaccines for him to take, because the only vaccines offer to him were being administered under an Emergency Use Authorization (EUA).  He was afforded no relief as a result.

94.    On May 20, 2022, Armstrong received official counseling, a 6105, for the following misconduct: violation of Article 92, UCMJ (failure to obey a lawful general order and failure to obey other lawful order), for failure to comply with the lawful orders to be vaccinated.

95.     Armstrong was selected for promotion to Captain, but that promotion is unlikely to occur now because of the discipline he is currently receiving for acting consistently with his religious faith.

96.     **Plaintiff Michael L. Gaydeski** is a Chief Warrant Officer 5 in the Marines. He is presently assigned to Headquarters Squadron, Marine Corps Air Station in Cherry Point, North Carolina.

97.     Chief Warrant Officer Gaydeski submitted an RAR on September 11, 2021, based on his sincere religious beliefs that prohibit him from knowingly supporting or benefiting from use of aborted fetal cells.  Gaydeski was interviewed by his command chaplain, who found that his religious beliefs were sincere.

98.     Gaydeski's RAR was denied on October 28, 2021, by David Ottignon.  The denial stated that the government had a compelling interest in mission accomplishment, including military readiness and the health and safety of the force.  The denial also stated that there was no less-restrictive way of accommodating his request that would ensure military readiness and the preservation of the health of the force.  The denial did not provide any details or documents in support of these conclusions.

99.     Gaydeski submitted an appeal of his RAR denial to the Commandant of the Marine Corps, David H. Berger, on November 15, 2021.  On March 24, 2022, his appeal was denied.  The denial stated that the vaccination requirement did not substantially burden Gaydeski's religious beliefs, that the government had a compelling interest in military readiness and in the health and safety of the force, and that less restrictive means were not acceptable.

100.   After the denial of his appeal, Gaydeski was ordered by his commanding officer to receive the COVID-19 vaccine, request retirement by April 12, 2022, or face adverse consequences.  Gaydeski chose to request retirement rather than violate his sincere religious beliefs.  He submitted his request for retirement on April 12, 2022, but his request is now being held in abeyance.  Meanwhile, Gaydeski has received a written counseling for violation of Article 92 of the UCMJ (failure to obey a lawful general order and failure to obey other lawful order).  As a result, Gaydeski is facing a possible Board of Inquiry and a potential loss of rank, a lower service characterization, and a resulting loss of benefits.

101.   **Plaintiff David R. Mendoza** is a Warrant Officer in the Marines. Warrant Officer Mendoza serves in a Communications Training Battalion, stationed in California.

102.   Mendoza submitted an RAR on October 7, 2021.  In it he explained his religious beliefs that God created human beings in his image, the human body is the temple of God, that consequently human life is sacred, and that God created the body's immune system to function as he made it.  He explained that COVID-19 vaccines are not like traditional vaccines that insert a weakened virus into the human body that activates the immune system to function as God created it to work.  Because the new technology of the COVID-19 vaccines instead inserts genetic code instructions into the cell and directs it to make a spike protein, Mendoza believes this interferes with the function of the human immune system.

103.   Mendoza interviewed with a chaplain on October 6, 2021, who determined that Mendoza's beliefs were genuine and that receiving the vaccine would substantially burden those beliefs.  Mendoza filed his RAR the next day, October 7, 2021.

104.    David Ottignon denied the RAR on February 9, 2022.  The reasons cited were government compelling interests in mission accomplishment, military readiness, and health and safety of the Total Force.

105.    Mendoza submitted his appeal to the Commandant on March 2, 2022, which was denied on April 17, 2022.  Mendoza subsequently was informed on April 26, 2022, and again on May 3, 2022, that he was purportedly in violation of Articles 90 and 92 of the UCMJ.

106.    **Plaintiff James Walls** is a Master Sergeant in the Marines.  Master Sergeant Walls serves in the 3d Littoral Combat Team, stationed at Marine Corps Base Hawaii.

107.    On August 2, 2021, Walls submitted a Religious Accommodation Request ("RAR") to be exempted from the COVID-19 vaccine requirement.  In his RAR, Walls explained his belief that the use of cells, cellular debris, protein and DNA from aborted children violates the commands found in the Bible, which in turn violates his sincerely held religious beliefs.

108.    As a requirement of the RAR process, on August 25, 2021, he was interviewed by the command chaplain regarding his sincerely held religious beliefs.  On August 26, 2021, the chaplain determined that his religious beliefs were sincere.

109.    On October 27, 2021, Deputy Commandant Ottignon denied Walls's RAR, citing the government's compelling interest in mission accomplishment, including military readiness and the health and safety of the Total Force.  However, the denial did not show that any consideration was given to use of aborted fetal tissue or the personal basis for which Walls submitted his RAR.  The denial consistently stated the government's

compelling interests in general, not how they applied to Walls individually in terms of his individual request.

110.    On May 19, 2022, Walls received a "6105 Administrative Counseling" for violating Article 92 of the UCMJ by disobeying a purportedly lawful general order to receive the COVID-19 vaccine.  He was also previously removed from any leadership duties or responsibilities during his unit's deployment to Japan.  Upon the unit's return, he received his job back with limitations due to his unvaccinated status.

111.    **Plaintiff John Morris Pritchard III** is a Gunnery Sergeant in the Marines. Gunnery Sergeant Pritchard serves in a military intelligence unit, stationed at Marine Corps Base Quantico in Virginia.

112.    Pritchard interviewed with a chaplain on August 25, 2021, who determined that his beliefs were sincere and that receiving the vaccine would be a substantial burden on those beliefs.  He explained that he had previously received vaccines to which he would also have rejected, but that he did not know the facts of their research and development at the time he received them.

113.    Pritchard then submitted an RAR on September 14, 2021.  He explained his faith-based belief that taking vaccines developed using diploid cell lines is tantamount to remote cooperation with evil (i.e., abortion).

114.    On November 9, 2021, Pritchard received notice from Deputy Commandant Ottignon that the RAR was denied.

115.    Pritchard then appealed Ottignon's decision on January 10, 2021.  In that appeal, Pritchard added that he had a documented case of COVID-19 infection and

therefore had natural immunity.  He believed that the natural immunity alone should allow the Marine Corps to grant his request.  That appeal is currently pending.

116.  **Plaintiff Connor Penn** is a Staff Sergeant in the Marines.  Staff Sergeant Penn serves in an Aerial Refueler Transport Squadron in Fort Worth, Texas.

117.  Staff Sergeant Penn submitted an RAR on October 15, 2021, to be exempted from the COVID-19 vaccine requirement, based on his sincere religious belief that prohibits him from knowingly supporting and willfully ingesting any substance that could be deemed harmful and that he does not trust.  Penn believes God has instructed him to make choices for his body that would only be considered either pleasing to God or in support of the message of Jesus Christ.  Penn's prayerful conviction is that taking the vaccine would be displeasing to God and therefore would cause him to sin.  Penn filed the RAR after interviewing with the command chaplain, who determined his beliefs were sincere and would be substantially burdened by taking a COVID-19 vaccine.

118.  Penn's request was denied on November 30, 2021.  Penn appealed that denial on December 8, 2021, to the Commandant.

119.  On June 27, 2022, Penn's appeal was denied by the Assistant Commandant of the Marine Corps, E.M. Smith.  In that denial, Smith stated that the Pfizer COVID-19 vaccine has received full approval from the Food & Drug Administration.  This reference is to BioNTech.

120.  In fact, BioNTech has not received final approval from the FDA.  It has only received an Emergency Use Authorization (EUA), not a final approval.  Smith's denial

further states that BioNTech is interchangeable for purposes of the Marines COVID-19

Vaccine Mandate with Pfizer's Comirnaty, which has received final approval.

121.   However, federal law provides that:

In the case of the administration of [an EUA] product … to members of the
armed forces, the condition described in [other sections] …, designed to
ensure that individuals are informed of an option to accept or refuse
administration of a product, may be waived only by the President only if the
President determines, in writing, that complying with such requirement is not
in the interests of national security.

10 U.S.C. § 1107a(a)(1).  The Office of Legal Counsel (OLC) at the Department of Justice

concluded that for vaccines being administered only under an EUA, "DOD is required to

provide service members with the specified notification unless the President waives the

condition pursuant to 10 U.S.C. § 1107a." *Whether Section 564 of the Food, Drug, and

Cosmetic Act Prohibit Entities from Requiring the Use of a Vaccine Subject to an

Emergency Use Authorization*, 45 OLC Op. (July 6, 2021), at *18.

122.   To the best of Plaintiffs' knowledge, President Biden has never signed such

a waiver per 10 U.S.C. § 1107a.

123.   Smith's denial also states, "Service members who are fully vaccinated have

a significantly lower risk of hospitalization, severe disease, and death."

124.   Smith's denial further states that weekly testing and social distancing are not

less restrictive means of achieving the government's compelling interest vis-à-vis COVID-

19 because "these means are less effective than vaccination."

125.   **Plaintiff Zachary Wales** is a Sergeant in the Marines.   Sergeant Wales serves in Signals Intelligence, stationed at Goodfellow Air Force Base in San Angelo, Texas.

126.   On October 19, 2021, Sergeant Wales was interviewed by the base chaplain regarding his sincerely held religious beliefs.   On October 20, 2021, the chaplain determined that Wales's religious beliefs were sincere and that his beliefs would be substantially burdened if he was required to take a COVID-19 vaccine.

127.   Also on October 20, 2021, Sergeant Wales submitted his RAR.  In it, Wales explained his religious belief that God's law is written on Wales's heart and that the consciences of God's faithful are guided by God's Spirit.   Wales believes that his convictions are the nudging of the Holy Spirit, and denying those convictions creates a crisis of conscience and faith.   His religious belief is that there is an inextricable link between spiritual and physical holiness, because followers of Christ are inhabited by the Holy Spirit, and they act as his holy temple.   One of the convictions guiding his faith-based actions is that life begins at conception, and God's wrath burns against those who shed innocent blood.   This conviction leads his fundamental opposition to abortion, and he believes strongly that the use of vaccines that are manufactured with, or tested on, aborted fetal cell lines would represent his explicit endorsement of the shedding of innocent blood.

128.   Wales has also had COVID-19, and as such has antibodies that provide protection for him against future COVID-19 infections, and others regarding transmitting COVID-19 to them.

129.   On April 11, 2022, Deputy Commandant Ottignon denied Wales's RAR. The principal reason cited was mission accomplishment, including consideration of potential medical risks to other persons comprising the unit.  Ottignon did not respond to Wales's commander's endorsement, which argued that impact on military readiness would be low, and that there would be no impact to unit cohesion or good order and discipline.

130.   **Plaintiff Cameron Davies** is a Corporal in the Maines.  He is assigned to the 1st Reconnaissance Battalion, stationed at Camp Pendleton in California.

131.   On September 9, 2021, Corporal Davies was counseled by his commander that noncompliance with immunization requirements may adversely affect readiness for deployment, assignment, international travel, or result in other administrative consequences.  "Administrative consequences" include non-judicial punishment (NJP), which, if received, would detrimentally impact his career.

132.   Corporal Davies interviewed with a chaplain on September 14, 2021, who determined Davies' beliefs are sincere and that receiving the vaccine would substantially burden those beliefs.  Davies then submitted an RAR on October 12, 2021, explaining his deeply held religious beliefs, how his views on vaccines had changed and been impacted by his faith, and providing fact-based evidence why it would compromise his ability to practice his faith if forced to go against his deeply held religious beliefs.

133.   Deputy Commandant David Ottignon denied Davies' RAR on October 29, 2021, claiming there was "[n]o less-restrictive way of accommodating your request that ensures military readiness and the preservation of the health of the force." The denial did

not state that any consideration was given to the basis of his appeal or supporting documents.

134.    On November 10, 2021, Davies submitted an appeal to Commandant of the Marine Corps.  That appeal is still pending.

## CLASS ACTION ALLEGATIONS

135.    This lawsuit is brought as a class action to redress Defendants' violations of the United States Constitution, the Religious Freedom Restoration Act of 1993, and the Administrative Procedure Act, on behalf of the Named Plaintiffs and members of a class of all members of the United States Marine Corps who are subject to the Marine Corps' COVID-19 Vaccine Mandate and who have submitted an RAR concerning the Marines COVID-19 Vaccine Mandate.

136.    This lawsuit is properly maintained as a class action under Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.  Subclasses may be added later as necessary or appropriate.

**A.    Rule 23(a)**

**Numerosity**

137.    The exact number of members of the class is not precisely known, but there are currently over 3,733 members of the United States Marine Corps who have submitted RARs concerning the Marines COVID-19 Vaccine Mandate.[9] Because of the large number of class members, joinder of individual class members is impracticable.

---

[9] *Monthly COVID-19 Update*, *supra* note 5.

**Commonality**

138.    Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Named Plaintiffs and the class members.   Similar or identical constitutional and statutory violations, policies, practices, and harm are prevalent across the class.   The harm sustained by class members flows in each instance from a common nucleus of operative fact: Defendants' policies or practices of across-the-board denial of all RARs, the Marine Corps' failure to conduct individualized assessments of RARs, and the Marine Corps policy or practice of taking adverse action against class members who submit RARs to the COVID-19 Vaccine Mandate.   Each instance of harm suffered by Named Plaintiffs and the class members has directly resulted from a common course of illegal conduct.   Thus, individual questions, if any, pale in comparison to the numerous common questions of fact and law presented in this lawsuit.

139.    Determination of the following common questions of fact will resolve in one stroke the following issues that are central to the validity of each one of the individual class member's claims:

> a.    Whether the Marine Corps has a policy or practice of denying all RARs concerning the COVID-19 Vaccine Mandate for Marines wishing to remain in the military;
>
> b.    Whether the Marine Corps has a policy or practice of not conducting an individualized assessment of all RARs concerning the COVID-19 Vaccine Mandate;

c.    Whether the Marine Corps has a policy or practice of taking adverse action against service members who submit RARs concerning the COVID-19 Vaccine Mandate and wish to remain in the military;

d.    Whether the Marine Corps has a policy or practice of coercing compliance with the COVID-19 Vaccine Mandate by threatening or taking adverse action against service members who submit RARs concerning the COVID-19 Vaccine Mandate and wish to remain in the military; and

e.    Whether the Marine Corps has a policy or practice of taking adverse action against service members who submit RARs concerning the COVID-19 Vaccine Mandate, but not service members who are on the verge leaving the Marines or who submit a request for a medical accommodation, medical exemption, administrative accommodation, or administrative exemption concerning the COVID-19 Vaccine Mandate.

140.    Determination of the following common questions of law will resolve the following legal issues that are central to the validity of each one of the individual class member's claims:

a.    Whether the Marine Corps' policy or practice of denying substantially all RARs concerning the Marine Corps' COVID-19 Vaccine Mandate means that members of the Marine Corps Class have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

b.   Whether the Marine Corps' policy or practice of denying substantially all RARs concerning the Marine Corps' COVID-19 Vaccine Mandate means that members of the Marine Corps Class have been and are being deprived of their rights under the Religious Freedom Restoration Act of 1993;

c.   Whether the Marine Corps' policy or practice of not conducting an individualized assessment of all RARs concerning the Marine Corps' COVID-19 Vaccine Mandate means that members of the Marine Corps Class have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

d.   Whether the Marine Corps' policy or practice of not conducting an individualized assessment of all RARs concerning the Marine Corps COVID-19 Vaccine Mandate means that members of the Marine Corps Class have been and are being deprived of their rights under the Religious Freedom Restoration Act of 1993;

e.   Whether the Marine Corps' policy or practice of taking adverse action against service members who submit RARs concerning the COVID-19 Vaccine Mandate means that members of the Marine Corps Class have been and are being deprived of the Free Exercise of Religion under the First Amendment to the United States Constitution;

f.   Whether the Marine Corps' policy or practice of taking adverse action against servicemembers who submit RARs concerning the Marine Corps COVID-19 Vaccine Mandate means that members of the Marine Corps Class

have been and are being deprived of their rights under the Religious Freedom Restoration Act of 1993;

g.    Whether the Marine Corps' policy or practice of coercing compliance with the COVID-19 Vaccine Mandate by threatening or taking adverse action against service members who submit RARs concerning the Marine Corps' COVID-19 Vaccine Mandate means that members of the Marine Corps Class have been and are being deprived of the Free Exercise of Religion under the First Amendment to the United States Constitution;

h.    Whether the Marine Corps' policy or practice of coercing compliance with the Marine Corps' COVID-19 Vaccine Mandate by threatening or taking adverse action against service members who submit RARs concerning the COVID-19 Vaccine Mandate means that members of the Marine Corps Class have been and are being deprived of their rights under the Religious Freedom Restoration Act of 1993; and

i.    Whether the Marine Corps' policy or practice of taking adverse action if a class member submits an RAR concerning the Marine Corps' COVID-19 Vaccine Mandate, but not if a member submits a request for a medical exemption or administrative exemption concerning the Marine Corps' COVID-19 Vaccine Mandate, means that members of the Marine Corps Class have been and are being deprived of their right to the Free Exercise of Religion under the First Amendment to the United States Constitution;

j.     Whether the Marine Corps' policy or practice of denying substantially all RARs concerning the Marine Corps' COVID-19 Vaccine Mandate while approving many requests for exemptions or accommodations for medical or administrative reasons means that members of the Marine Corps Class have been and are being deprived of their right to equal protection under the Due Process Clause of the Fifth Amendment to the United States Constitution;

k.     Whether the Marine Corps' policy or practice of denying substantially all RARs concerning the Marine Corps' COVID-19 Vaccine Mandate means that members of the Marine Corps Class have been and are being deprived of their right to refuse to be vaccinated with a vaccine that has not received final FDA approval under the Food, Drug, and Cosmetic Act, in violation of the Administrative Procedure Act.

**Typicality**

141.     The claims alleged by the Named Plaintiffs and the resultant harms are typical of the claims of each member of the proposed class.  Typicality exists because all absent class members have been injured, or are at risk of injury, as a result of the same policies or practices.

**Adequacy**

142.     The Named Plaintiffs will fairly and adequately protect the interests of the class.  There are no conflicts of interest between the Named Plaintiffs and the other class members.

143.   The Named Plaintiffs have retained counsel with extensive experience litigating complex class action lawsuits in federal court.  Named Plaintiffs' counsel have committed sufficient resources to represent the class.  Named Plaintiffs' counsel therefore are well suited to fairly and adequately represent the class's interests.

**B.    Rule 23(b)(2)**

144.   Defendants have acted or failed to act on grounds generally applicable to the class, necessitating declaratory and injunctive relief for the class.  Named Plaintiffs' counsel know of no conflicts among the class members.

## CAUSES OF ACTION

### COUNT I

### <u>Violation of Plaintiffs' First Amendment Right to the Free Exercise of Religion</u><br><u>U.S. Const. amend. I</u>

145.   Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

146.   The First Amendment's Free Exercise Clause prohibits the government from enacting or enforcing non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

147.   The original public meaning of the Free Exercise Clause is that the government may not substantially burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

148.    Plaintiffs have sincerely held religious beliefs that prohibit their receipt of presently available COVID-19 vaccines.

149.    Defendants' policy of denying religious accommodations for Defendants' COVID-19 Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine)—the "Policy"—that would violate those religious beliefs, or suffer adverse employment action and financial harm, among other harms.

150.    The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists and assignments, adverse performance evaluations, inability to attend certain military training and education schools, removal from assigned job duties, inability to retire in good standing, loss of special pay, placement in a non-deployable status, involuntary placement into the Individual Ready Reserve without access to military benefits, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

151.    Multiple Plaintiffs received a record of individual counseling stating that noncompliance with immunization requirements may adversely affect deployment, assignment, or international travel, or result in other administrative consequences.

152.    Defendants' COVID-19 Vaccine Mandates, and Defendants' policy of denying religious exemptions for Marines who wish to remain in the military, are not a neutral and generally applicable law or policy. "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by

providing a mechanism for individualized exemptions." *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1877 (2021) (cleaned up).  Indeed, the creation of such a system "invites the government to decide which reasons for not complying with the policy are worthy of solicitude." *Id.* at 1879 (cleaned up).  And "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Id.* at 1877.

153.   The Policy vests DoD and Marine Corps decisionmakers with the discretion to give individual exemptions to the mandates for medical and administrative reasons and to exempt service members already participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID- 19.

154.   The Marine Corps has granted at least 545 medical and administrative exemptions, but only 11 religious exemptions.  *Monthly COVID-19 Update*, *supra* note 5. In another branch's implementation of the DoD Vaccine Mandate, the Air Force admitted in a preliminary injunction hearing that all granted RARs were given to service members who were already exiting the Air Force.  Kristina Wong, *Exclusive: Air Force Admits All Granted Religious Accommodations for Vax Were for Airmen Already Leaving Service*, BREITBART NEWS (May 10, 2022), https://www.breitbart.com/politics/2022/05/10/exclusive-air-force-admits-all-granted-religious-accommodations-for-vax-were-for-airmen-already-leaving-service/.  It is unknown at this time whether the 11 religious exemptions in the Marine Corps were given under similar circumstances.

155.    Plaintiffs are aware of unvaccinated individuals with medical exemptions who have been permitted to carry out the same duties Plaintiffs have not been allowed to perform due to Plaintiffs' unvaccinated status and RARs.

156.    Defendants' Policy of not granting religious accommodations to the COVID-19 Vaccine Mandates fails strict scrutiny.

157.    Defendants do not have a compelling government interest in requiring Plaintiffs to violate their sincerely held religious beliefs by taking a COVID-19 vaccine, as shown by: Defendants' across-the-board exemption for vaccine trial participants and grant of over 500 medical and administrative exemptions; the Marine Corps' 95 percent vaccination rate against COVID-19; and Defendants' months-long delay in announcing—and even further delay in implementing—their Vaccine Mandates following the December 2020 availability of COVID-19 vaccines.

158.    Additionally, Defendants' Policy of denying RARs to Defendants' COVID-19 Vaccine Mandates to Plaintiffs is not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year and a half during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

159.    Moreover, Defendants possess multiple less restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing—all methods that Defendants successfully employed before announcement and enforcement of their Vaccine Mandates.   Defendants also now have available a growing list of treatment options that substantially reduce severe symptoms that may accompany COVID-19 infection.   The government has authorized various treatments for

hospitalized and non-hospitalized COVID patients,[10] and has authorized at least one oral antiviral for COVID-19 treatment.[11]

160.    Indeed, if Defendants are truly concerned about COVID-19 affecting its personnel, they would need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19.  *Science Brief: COVID-19 Vaccines and Vaccination,* Ctrs. for   Disease   Control   &   Prevention   (last   updated   Sept.   15,   2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

161.    Accordingly, Defendants' Policy violates Plaintiffs' rights to the free exercise of religion under the First Amendment.

162.    Because of Defendants' policies and practices, Plaintiffs have suffered and continue to suffer irreparable harm.  They are entitled to equitable relief.

163.    Plaintiffs are entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' illegal

---

[10] *Possible Treatment Options for COVID-19*, U.S. Dep't of Health & Hum. Servs. (last accessed  May  26,  2022),  https://combatcovid.hhs.gov/possible-treatment-options-covid-19; *Know Your Treatment Options for COVID-19*, U.S. Food & Drug Admin. (last accessed May 26, 2022),  https://www.fda.gov/consumers/consumer-updates/know-your-treatment-options-covid-19.

[11] *See* FDA News Release, *Coronavirus (COVID-19) Update: FDA Authorizes First Oral Antiviral  for  Treatment  of  COVID-19*, U.S. Food & Drug Admin. (Dec. 22, 2021), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-first-oral-antiviral-treatment-covid-19.

policies and practices.  Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## COUNT II

### Violation of Plaintiffs' Fifth Amendment Right to Equal Protection
### U.S. CONST. amend. V

162.  Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

163.  The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.  That guarantee "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

164.  That equal protection guarantee is also a component of the Due Process Clause of the Fifth Amendment, enforceable against the Federal Government.  *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017).

165.  When a government action giving rise to an equal protection claim burdens the exercise of a fundamental right, a court evaluates that action under strict scrutiny.  *Nat'l Rifle Ass'n of Am. v. McCraw*, 719 F.3d 338, 350 (5th Cir. 2013).

166.  The free exercise of religion is a fundamental right.  *See Brown v. Collier*, 929 F.3d 218, 232 (5th Cir. 2019).

167. Defendants are able to grant Marines exemptions to the Vaccine Mandate.

168. Defendants do not expel unvaccinated Marines if they are granted exemptions.

169. Defendants have granted exemptions for medical or administrative reasons, and have granted at least 545 such exemptions thus far. *See supra* note 5.

170. Defendants have denied exemptions to Plaintiffs.

171. For the reasons explained under Count I, Defendants do not have a compelling public interest in denying exemptions to Plaintiffs.

172. For the reasons explained under Count I, Defendants' action of mandating that Plaintiffs take a COVID-19 vaccine is not narrowly tailored.

173. For the reasons explained under Count I, Defendants' Policy of denying RARs from Defendants' Vaccine Mandates therefore fails strict scrutiny.

174. Accordingly, Defendants' Policy violates Plaintiffs' equal protection rights under the Due Process Clause of the United States Constitution.

175. Because of Defendants' Policy, Plaintiffs have suffered, and continue to suffer, irreparable harm. They are entitled to equitable relief.

176. Plaintiffs are entitled to a declaration that Defendants' Policy violated their rights under RFRA and an injunction against Defendants' illegal policies and practices. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## COUNT III

### Violation of Plaintiffs' Rights under the Religious Freedom Restoration Act
### 42 U.S.C. §§ 2000bb *et seq.*

177.     Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

178.     The Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb *et seq.* ("RFRA"), states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).

179.     The act broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

180.     In *Burwell v. Hobby Lobby Stores*, the Supreme Court held that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." 573 U.S. 682, 710 (2014) (internal quotation marks omitted).

181.     The Supreme Court has held repeatedly that courts may not question whether sincerely held religious beliefs are reasonable. *Id.* at 724.

182.     RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

183.     DODI 1300.17 explicitly recognizes RFRA protections for Department of Defense service members.

184.    Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), a governmental act that places a substantial burden on free exercise violates RFRA.

185.    Plaintiffs have sincerely held religious beliefs that prohibit their receipt of presently available COVID-19 vaccines.

186.    Defendants' Policy regarding denying RARs to Defendants' COVID-19 Vaccine Mandates substantially burden Plaintiffs' sincerely held religious beliefs by requiring them to take an action (receiving a COVID-19 vaccine) that would violate those religious beliefs, or suffer adverse employment action, financial harm, and potential physical harm.

187.    The adverse actions to which Plaintiffs are subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, adverse fitness evaluations, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

188.    Multiple Plaintiffs received a record of individual counseling stating that noncompliance with immunization requirements may adversely affect deployment, assignment, international travel, or result in other administrative consequences.

189.     Many Plaintiffs have already suffered and continue to suffer adverse employment actions merely for requesting relief that is protected by RFRA.

190.     For the reasons already explained, Defendants' Policy regarding RARs fails strict scrutiny.

191.     Accordingly, Defendants' Policy violates Plaintiffs' rights under RFRA.

192.     Because of Defendants' Policy, Plaintiffs have suffered, and continue to suffer, irreparable harm.  They are entitled to equitable relief.

193.     Plaintiffs are entitled to a declaration that Defendants violated their rights under RFRA and an injunction against Defendants' illegal policies and practices. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## COUNT IV

### Violation of Plaintiffs' Rights under the Administrative Procedure Act 5 U.S.C. § 706(2)(C)–(D)

194.     Plaintiffs repeat and re-allege each of the allegations contained in the foregoing paragraphs of this Complaint.

195.     The Administrative Procedure Act (APA) requires that a court shall "hold unlawful and set aside agency action … found to be—in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law."  5 U.S.C. § 706(2)(C)–(D).

196.     The FDA may issue an "emergency use authorization" (EUA) under Section 564 of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 360bbb-3.  FDCA generally

requires informed consent for such medical products, and allows only limited exceptions to that requirement. *See id.* § 360bbb-3(b)(1).

197.    Under the FDCA, the FDA imposes conditions on an EUA. These conditions are:

> designed to ensure the individuals to whom the product is administered are informed … of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

*Id.* § 360bbb-3(e)(1)(A)(ii)(II)–(III).

198.    Congress separately enacted a specific provision pertaining to military, referring to the "option to accept or refuse" medical products that do not have full FDA approval. 10 U.S.C. § 1107a. The FDA's own guidance document for treatments authorized under an EUA suggests this as well. *See* FDA, *Emergency Use Authorization of Medical Products and Related Authorities: Guidance for Industry and Other Stakeholders* at 24 & n.46 (Jan. 2017). Thus, regarding that have not received full FDA approval, "Congress has prohibited the administration of investigational drugs to service members without their consent." *Doe v. Rumsfeld*, 341 F. Supp. 2d 1, 19 (D.D.C. 2004).

199.    This restriction can be set aside if it is "waived only by the President," but even then, "only if the President determines, in writing, that complying with such requirement is not in the interests of national security." 10 U.S.C. § 1107a(a)(1).

200.    The President has not signed any waiver pursuant to Section 1107a. The OLC opinion quoted in Paragraph 118 of this Complaint is clearly premised on the

President's not having signed any waiver as of that opinion's date of July 6, 2021.  Plaintiffs can find no record of the President having signed such a waiver anytime from the date of the OLC opinion to the present date.  And the Secretary of Defense is required to inform Congress when the President signs such a waiver.  *Id.* § 1107(f)(3)(B).  Plaintiffs cannot find any record of the Secretary doing so.

201.    The Marine Corps COVID-19 Vaccine Mandate is therefore in excess of the authority granted to Defendants by statute, and to enforce that vaccination requirement on Plaintiffs without the President's having signed a waiver is impose a requirement without observance of a procedure required by law.  The mandate accordingly violates the APA.

202.    Because of Defendants' policies and practices, Plaintiffs have suffered, and continue to suffer, irreparable harm.  They are entitled to equitable relief.

203.    Plaintiffs are entitled to a declaration that Defendants violated their rights under the APA and an injunction against Defendants' illegal policies and practices.  Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### PRAYER FOR RELIEF

**NOW THEREFORE**, having fully stated their claims against the Defendants, Plaintiffs pray that this Court would award them relief as follows:

a.    Certification of this action as a class action under Federal Rules of Civil Procedure 23(a) and (b);

b.      A declaratory judgment that Defendants' Policy violates Plaintiffs' and other class members' rights under the First Amendment to the United States Constitution;

c.      A declaratory judgment that Defendants' Policy violates Plaintiffs' and other class members' rights under the Fifth Amendment to the United States Constitution.

d.      A declaratory judgment that Defendants' Policy violates Plaintiffs' and other class members' rights under the Religious Freedom Restoration Act;

e.      A declaratory judgment that Defendants' COVID-19 Vaccine Mandate violates Plaintiffs' and other class members' rights under the Administrative Procedure Act;

f.      A temporary restraining order and preliminary injunction against Defendants and their agents, servants, employees, attorneys, and all persons and entities directly or indirectly in active concert or participation with them that prohibits them from making non-receipt of COVID-19 vaccination or submission of a request for a religious accommodation from COVID-19 vaccination a basis for any adverse action against any service members including, but not limited to: administrative counselings, admonishments, or reprimands; nonjudicial punishment or separation from service; involuntary placement in the Individual Ready Reserve; change in job titles or duties, removal from assignments, or non-issuance of assignments; negative performance reviews, promotion recommendations, or stratifications; giving a less than honorable discharge; recoupment of education or training expenses; determination of medical disqualification or non-deployability; loss or delay of promotion, training opportunities, or retirement; loss of bonuses, pay or benefits; or precluding servicemembers from traveling to and performing duty in person, unless

52

Defendants can prove that failing to take a particular adverse action against the servicemember in question would likely have a real and concrete (not theoretical) adverse impact on a compelling government interest.

g.     Plaintiffs' reasonable attorney's fees, costs, and other costs and disbursements in this action pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988; and

h.     All other relief under law or equity that the Court deems just, proper, and equitable.

August 18, 2022                              Respectfully submitted,

<div style="margin-left:40%">

*/s/ Kenneth A. Klukowski*
Gene C. Schaerr*
   D.C. Bar No. 416368
Kenneth A. Klukowski
   *Attorney-in-Charge for Plaintiffs*
   D.C. Bar No. 1046093
   S.D. Texas Bar No. 3145314
Annika M. Boone* **
   Utah Bar No. 17176
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
kklukowski@schaerr-jaffe.com

* *Pro hac vice* motions forthcoming
** Not yet admitted in D.C. Practicing
under the supervision of D.C. attorneys.

*Counsel for Plaintiffs and the
Proposed Class*

</div>