**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| JASON C. SCHNEIDER, individually and on behalf of all others similarly situated, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | Case No: 22-cv-293 |
| v. | § § | |
| LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, *et al.*, | § § § | |
| *Defendants*. | § § § | |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

INTRODUCTION AND SUMMARY............................................................... 1

FACTS ................................................................................................................. 3

STANDARD OF REVIEW ................................................................................ 5

ARGUMENT ...................................................................................................... 6

    I.   SECTION 1988 AUTHORIZES ATTORNEYS' FEES FOR A "PREVAILING PARTY," A TERM ILLUMINATED BY CONGRESS' PURPOSE...................................... 6

    II.  PLAINTIFFS ARE PREVAILING PARTIES BECAUSE THE PRELIMINARY INJUNCTION PROTECTING THEM OPINED ON THE MERITS OF THE RFRA CLAIM.......................................................................................................... 11

        A.   A preliminary injunction conveys prevailing party status when plaintiffs show a substantial likelihood of success on the merits................. 12

        B.   *CFMO* included such a preliminary injunction that covered Plaintiffs......... 14

        C.   Class members are "parties" and should not be deprived of attorneys' fees because parallel litigation reached the desired result before this Court could act............................................................................................. 15

    III.  THE FIFTH CIRCUIT LIKEWISE DETERMINED THAT THE PENTAGON VACCINE MANDATE VIOLATED RFRA, JUSTIFYING A PRELIMINARY INJUNCTION.............................................................................................. 19

    IV.  PLAINTIFFS SHALL CONFER WITH OPPOSING COUNSEL TO DETERMINE THE TOTAL AMOUNT DUE. ............................................................................ 22

CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Blanchard v. Bergeron*, 489 U.S. 87 (1989)........................................................................23

*Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977)..............................................................10

*Buckhannon Bd. & Care Home Inc. v. W. Va. Dep't of Health & Hum. Res.*,
    532 U.S. 598 (2001)...........................................................................................................13

*Colonel Fin. Mgmt. Officer v. Austin*, 622 F. Supp. 3d 1187 (M.D. Fla. 2022)6, 10, 11, 15

*Colonel Fin. Mgmt. Officer v. Austin*, No. 8:22-CV-1275,
    2023 WL 2764767 (M.D. Fla. Apr. 3, 2023)......................................................................7

*Cruz v. Hauck*, 762 F.2d 1230 (5th Cir. 1985)......................................................................23

*Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015)....................................................8, 9, 14, 15

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)................................................................15

*Devlin v. Scardelletti*, 536 U.S. 1 (2002)............................................................................16

*Doe v. Busbee*, 684 F.2d 1375 (11th Cir. 1982)..................................................................13

*El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417 (5th Cir. 2009)................................6

*Fulton v. City of Phila.*, 141 S. Ct. 1868 (2021)..................................................................20

*Grisham v. City of Fort Worth*, 837 F.3d 564 (5th Cir. 2016)..............................................6

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)........................................................................18

*Hernandez v. Robert Dering Constr., LLC*, 191 F. Supp. 3d 675 (S.D. Tex. 2016).........15

*Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)....................................23

*Lefemine v. Wideman*, 568 U.S. 1 (2012)..............................................................................5

*Lewis v. Continental Bank Corp.,* 494 U.S. 472 (1990)......................................................17

*Lundin v. Mecham*, 980 F.2d 1450 (D.C. Cir. 1992)......................................................18, 19

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995)............................................15

*Nken v. Holder*, 556 U.S. 418 (2009)..................................................................................20

*Petteway v. Henry*, 738 F.3d 132 (5th Cir. 2013) ................................................. 13, 14, 15

*Putnam v. Davies*, 149 F.3d 1184 (6th Cir. 1998)................................................. 18

*Putnam v. Davies*, 960 F. Supp. 1268 (S.D. Ohio 1997) .................................... 17

*Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 142 S. Ct. 1464 (2022)................. 5

*Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696 (5th Cir. 2020) ........ 5

*S. Tex. Elec. Coop. v. Dresser-Rand Co.*,
   No. CIVA V-06-28, 2010 WL 1855959 (S.D. Tex. May 5, 2010) ............................22

*Sole v. Wyner*, 551 U.S. 74 (2007) ................................................................. 14

*Sw. Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 551 (5th Cir. 2003) ................. 9

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021)........................................................ 20

*U.S. Navy SEALs 1–26 v. Austin*, 594 F. Supp. 3d 767 (N.D. Tex. 2022) ........................ 21

*U.S. Navy SEALs 1–26 v. Biden*, 27 F.4th 336 (5th Cir. 2022)................................... 20, 21

*U.S. Navy SEALs 1–26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022) ........................ 20

*U.S. Navy SEALS 1–26 v. Biden*, 72 F.4th 666 (5th Cir. 2023) ................................. 21

*United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762 (5th Cir. 1996) ....................... 24

*Volk v. Gonzalez*, 262 F.3d 528 (5th Cir. 2001) ................................................... 5

*Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761 (5th Cir. 1996).................... 23

*Yousuf v. Motiva Enterprises LLC*, 246 F. App'x 891 (5th Cir. 2007) ........................... 14

**Statutes**

42 U.S.C. § 1973*l*(e)................................................................................. 8

42 U.S.C. § 1983 ...................................................................................... 8

42 U.S.C. § 1988 ...............................................................................passim

42 U.S.C. § 2000bb *et seq.* ..................................................................... 6, 14

52 U.S.C. § 10310 .................................................................................... 8

James M. Inhofe National Defense Authorization Act for Fiscal Year 2023,
Pub. L. No. 117-263, § 525, 136 Stat. 2395 (2022) ...................................................... 21

**Rules**

FED. R. CIV. P. 54 .................................................................................................... 1, 23

FED. R. CIV. P. 54 ADVISORY COMM. NOTES TO 1993 AMENDMENT ................................ 24

**Other Authorities**

Carlos Del Toro, ALNAV 062/21, *Mandatory Vaccination Policy* .................................... 3

Lloyd Austin, *Mandatory Coronavirus Disease 2019 Vaccination of Department
of Defense Service Members*, Dep't of Def. (Aug. 24, 2021) ........................................ 3

*Mandatory Covid-19 Vaccination of Marine Corps Active and Reserve
Components*, Marines (Sept. 1, 2021) ........................................................................... 4

**Treatises**

10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
PROCEDURE (4th ed.) ............................................................................................... 9, 23

iv

Pursuant to Federal Rule of Civil Procedure 54(d)(2), Plaintiffs respectfully move this Court to grant them attorneys' fees and costs,  pursuant to 42 U.S.C. § 1988, for the hours devoted to this case prior to a class certification in another court that encompassed Plaintiffs here, as well as for the hours devoted to seeking these fees subsequent to the dissolution of that class and of Defendants' refusal to pay.  Furthermore, Plaintiffs request oral argument on this motion, as it presents a question of first impression not only in this Court but in the Nation, and that question presents a significant issue regarding the civil rights of citizens who have been injured by the Federal Government.

## INTRODUCTION AND SUMMARY

The issue presented by this motion is of critical importance to the enforcement of rights protected by the Religious Freedom Restoration Act of 1993 (RFRA), by which Congress sought to protect persons whose religious beliefs are burdened by actions of the Federal Government.  To encourage Americans whose rights are being violated in that fashion, Congress also amended the Civil Rights Attorney's Fees Act, 42 U.S.C. § 1988, to empower district courts to grant attorneys' fees and costs to plaintiffs who become prevailing parties in RFRA litigation.

There can be no question that Plaintiffs are prevailing parties, or that they filed suit in this Court under RFRA and requested fees under § 1988.  While a motion for a preliminary injunction was pending in this suit, another judge ruled in a parallel suit that was already pending in the Middle District of Florida.  The court there agreed with Plaintiffs here that the Pentagon's refusal to grant religious exemptions to its Vaccine Mandate violated RFRA, certified a nationwide class that included all Unites States

Marines who religiously objected to the Vaccine Mandate, and enjoined its enforcement. Defendants moved this Court to stay this case, arguing that Plaintiffs here could receive every form of relief they sought here from the Middle District of Florida.  This Court granted that motion, with the caveat that Plaintiffs could return to this Court if Defendants' assurances proved to be untrue.

One of the forms of relief Plaintiffs sought was attorneys' fees for the time and financial contributions they had made in this case.  Given that they were for a time represented by class counsel, this request is narrowed to the time spent prior to the Middle District of Florida's class certification order.  That claim for relief remains outstanding, because, with the class's dissolution, Plaintiffs automatically revert to this Court, and are again represented by undersigned counsel here, rather than the prior class counsel. Plaintiffs now seek that remaining relief.

Plaintiffs must be treated as prevailing parties here.  Fifth Circuit precedent shows that a plaintiff obtains prevailing party status after showing a substantial likelihood of success on the merits resulting in a preliminary injunction, unless that determination is subsequently reversed on final judgment.  Moreover, the Fifth Circuit specifically holds that this Court must look to both the language and the purpose of § 1988 in determining who qualifies as a prevailing party entitled to fees.  Congress' purpose in enacting § 1988 was to encourage aggrieved citizens to act as private attorneys general for civil rights violations, urging them to retain counsel and file suit for violations of specific statutes, including RFRA.  The Fifth Circuit has construed § 1988 broadly to effectuate that purpose, as have other appellate courts.  And class members are regarded as parties to litigation.

2

Each of those rules points to attorneys' fees for Plaintiffs here.  Plaintiffs were members of a certified class that received a preliminary injunction holding that Defendants had violated RFRA.  That merits determination was never reversed.  Likewise, in a related class action governing the Navy, the Fifth Circuit affirmed that the Pentagon's Vaccine Mandate violates RFRA to the extent it precludes religious exemptions.  This Court should give full credit to both of those RFRA analyses.  A grant of fees to Plaintiffs is fully consistent with Congress' purpose in § 1988, and it would be contrary to Congress purpose to deny fees to aggrieved Plaintiffs who correctly argued that the military's refusal to grant religious exemptions to the Vaccine Mandate violated RFRA, merely because Defendants' actions were illegal on such a widespread scale that another court reached that conclusion before this Court had occasion to do so.

## FACTS

Defendants required virtually all servicemembers in the United States Marine Corps to receive a vaccine against Covid-19, or else be involuntarily separated from the military. First, Secretary of Defense Lloyd J. Austin issued a memorandum on August 24, 2021, directing DoD to vaccinate all active-duty and reserve service members against COVID-19. Lloyd Austin, *Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members*, Dep't of Def. (Aug. 24, 2021), https://tinyurl.com/5xtab3en. Secretary of the Navy Carlos Del Toro issued a directive to implement Secretary Austin's decision.  Carlos Del Toro, ALNAV 062/21, *Mandatory Vaccination Policy*, *available at* https://tinyurl.com/ALNAV06221.  On September 1, 2021, General David H. Berger, Commandant of the Marine Corps, implemented those directives by issuing Marine

Administrative Message ("MARADMIN") 462/21 to all Marine Commanders, entitled *Mandatory Covid-19 Vaccination of Marine Corps Active and Reserve Components* (the "Marines Vaccine Mandate"), *available at* https://www.marines.mil/News/Messages/ Messages-Display/Article/2761259/mandatory-covid-19-vaccination-of-marine-corps-active-and-reserve-components/.

Plaintiffs religiously objected to the "Vaccine Mandate" and filed this class action on August 18, 2022, alleging that denying them exemptions from the Vaccine Mandate violated, *inter alia*, the Religious Freedom Restoration Act.  Compl. ¶¶ 2, 7, Dkt. 1.  As part of their Prayer for Relief in this lawsuit, Plaintiffs asked for attorneys' fees and costs under 42 U.S.C. § 1988.  *Id.* at 53 ¶ (g).  Defendants' actions injured so many servicemembers that multiple lawsuits were filed nationwide, including another class action for religiously objecting Marines.  The judge presiding over such a parallel suit in the Middle District of Florida ruled on that case's motions for a preliminary injunction and class certification prior to this Court being able to reach a decision, certifying a nationwide class that included Plaintiffs here and granting a preliminary injunction because the class members had shown a substantial likelihood that the denials of religious exemptions to the Vaccine Mandate violated RFRA.  *See* Pls.' Notice of Supp. Auth. 1, Dkt. 8; Pls.' Opp. Defs' Mot. Stay 8, Dkt. 21.  Defendants consequently asked this Court to stay this case. Defs. Mot. Stay 1, Dkt. 15.  This Court granted the stay on September 7, 2022, relying on Defendants' assurances that this Court could not provide any relief that the Middle District of Florida would not be able to provide, and thus that "a stay of these proceedings does not prejudice Plaintiffs in the least."  *See* Order and Op. Staying Case 3, Dkt. 25.  This Court

included that if "the class-wide injunction in *Colonel FMO* is ultimately vacated, stayed, or otherwise lifted, Plaintiffs are not prejudiced in continuing to seek both individualized and class-wide injunctive relief at that time in this case." *Id.*

Since that time, Congress abolished the Vaccine Mandate, Defendants accordingly rescinded it, and the Middle District of Florida has dissolved the class.  Jt. Status Rep. 1, Dkt. 29.  Plaintiffs are seeking attorneys' fees for the time spent on this case, and on July 12, 2023, this Court authorized Plaintiffs to file a Motion for Attorneys' Fees.  Order 1, Dkt. 30.

## STANDARD OF REVIEW

42 U.S.C. § 1988 grants a district judge the discretion to award attorneys' fees to a "prevailing party" in a suit brought under one of the statutes enumerated in § 1988, a decision reviewed for abuse of discretion.  *Volk v. Gonzalez*, 262 F.3d 528, 531, 534 (5th Cir. 2001).  However, a prevailing plaintiff in such a case "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Lefemine v. Wideman*, 568 U.S. 1, 5 (2012) (internal quotation marks omitted).  Consequently, "given the strong policy behind § 1988 of awarding fees to prevailing plaintiffs, defendants must make an extremely strong showing of special circumstances to avoid paying attorneys' fees and that the discretion to deny § 1988 fees is extremely narrow." *Pruett v. Harris Cnty. Bail Bond Bd.*, 499 F.3d 403, 417 (5th Cir. 2007) (cleaned up), *overruled on other grounds*, *as recognized in Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696, 703 n.3 (5th Cir. 2020) (content neutrality rule), *rev'd and remanded* 142 S. Ct. 1464 (2022).  "A district court abuses this discretion if it applies an erroneous interpretation

of special circumstances to justify denial of fees to an otherwise prevailing party." *Grisham v. City of Fort Worth*, 837 F.3d 564, 567–68 (5th Cir. 2016) (cleaned up). Finally, whether a litigant is a "prevailing party" is a pure question of law reviewed de novo. *El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 422–23 (5th Cir. 2009).

## ARGUMENT

I.     SECTION 1988 AUTHORIZES ATTORNEYS' FEES FOR A "PREVAILING PARTY," A TERM ILLUMINATED BY CONGRESS' PURPOSE.

As previously noted, this motion presents a question of first impression for this Court. Plaintiffs filed suit here under the Religious Freedom Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat. 1488 (1993) (codified as amended at 42 U.S.C. § 2000bb *et seq.*) (RFRA). RFRA is one of the statutes eligible for fee-shifting under the Civil Rights Attorney's Fees Act, Pub. L. No. 94-559, § 2, 90 Stat. 2641 (1976) (codified as amended at 42 U.S.C. § 1988), as updated to include RFRA. *See* 42 U.S.C. § 1988(b). The litigation challenging Secretary of Defense Lloyd Austin's order that servicemembers asserting religious objections must receive a Covid-19 vaccine (the "Vaccine Mandate") arises under RFRA, wherein a different district court in a parallel case—the Middle District of Florida—certified a nationwide class that included Plaintiffs here, and entered a preliminary injunction determining that Defendants' Vaccine Mandate violated RFRA as to those asserting religious objections. *See Colonel Fin. Mgmt. Officer v. Austin*, 622 F. Supp. 3d 1187, 1210–14, 1217 (M.D. Fla. 2022) (*CFMO I*). That case later became moot only when Defendants abolished their illegal policy, and the class was dissolved solely on that basis. *Colonel Fin. Mgmt. Officer v. Austin*, No. 8:22-CV-1275, 2023 WL 2764767,

at *3 (M.D. Fla. Apr. 3, 2023) (*CFMO II*).  The question presented here is whether Plaintiffs retain their "prevailing party" status as they revert to this Court, such that they are entitled to attorneys' fees to reimburse them for the limited number of hours Plaintiffs' counsel devoted to their case in this Court prior to the Middle District of Florida's class certification order.[1]

1.     Defendants have made clear that they oppose Plaintiffs' fee request.  Indeed, it appears that Defendants take the position that *none* of the prevailing Marines in other cases—and possibly servicemembers in other branches as well—are prevailing parties under § 1988.[2]   That is patently absurd.  The precedents cited below make it clear that there are prevailing parties against the Department of Defense in litigation over Secretary Austin's Vaccine Mandate, including the version imposed on United States Marines that was enjoined in *CFMO*.   The only question here is whether Plaintiffs here retain that prevailing party status as they return to this Court from *CFMO*.  So this motion is not about Defendants taking a careful and thoughtful approach to distinguishing Plaintiffs here from the original litigant Marines in the Middle District of Florida who received the preliminary

---

[1] As explained below, the amount of the award should also include the fees and costs for hours later expended on securing those original attorneys' fees.

[2] This is apparently Defendants' position because they refuse to disclaim it.  To clarify the issues for briefing, Plaintiffs attempted to avoid burdening the Court with unnecessary arguments, asking Defendants if they are arguing that (1) there are no prevailing parties here, or if they instead acknowledge that (2) there are prevailing parties here, but Defendants do not believe that unnamed class members like Plaintiffs retain that status when they revert to this Court.  Defendants refused to answer that clarifying question, calling it "irrelevant."  So Plaintiffs will prudently err on the side of caution by proceeding to brief that very-relevant issue here, styling as "Defendants' apparent position" the view that there are no prevailing parties either in this case or in *CFMO*.

injunction in *CFMO* directly as named plaintiffs, or the successful named plaintiffs in the class actions for the other military branches challenging their service-specific implementation of Secretary Austin's Vaccine Mandate.  Defendants instead apparently take the implausible position that Plaintiffs here are not prevailing parties because there are no prevailing parties in *any* of these cases, despite Defendants' being on the losing end of multiple preliminary injunctions holding that denying exemptions to the Secretary's Vaccine Mandate violates RFRA.  Defendants' apparent position is plainly contrary to law.

2.    Courts must look both to statutory text and to legislative purpose when determining who qualifies as a "prevailing party" entitled to fees under § 1988.  The statute reads in relevant part: "In any action or proceeding to enforce a provision of [various statutes including RFRA], the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs…."  42 U.S.C. § 1988(b).

The Fifth Circuit highlighted that courts must consider both "language and purpose" when interpreting two fee-shifting provisions, one in the Voting Rights Act codified at that time at 42 U.S.C. § 1973*l*(e), and the other being 42 U.S.C. § 1988,[3] before concluding that they "are identically construed."  *Davis v. Abbott*, 781 F.3d 207, 213 n.6 (5th Cir. 2015). *Davis* noted with approval that in a 2003 case involving claims under both 42 U.S.C. § 1983 and state law claims adjudicated under pendent jurisdiction, a case in which the court never resolved the § 1983 issue,[4] the Fifth Circuit held "that even though the district

---

[3] That Voting Rights Act provision has since been transferred to 52 U.S.C. § 10310.

[4] 42 U.S.C. § 1983 is another statute enumerated in § 1988 as a civil rights law that carries this fee-shifting benefit.  *See* 42 U.S.C. § 1988(b).

court did not decide the fee-eligible § 1983 claim, the pendent state-law claim could still support a fee award under § 1988 because the § 1983 claim was 'substantial' and the successful state-law claim arose out of a 'common nucleus of operative facts.'" *Id.* at 219 (quoting *Sw. Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 551 (5th Cir. 2003)).

The Fifth Circuit recently reaffirmed this principle and held it applies to the precise issue in this case.  When construing § 1988 to determine whether someone is a "prevailing party," this Court must look to both § 1988's "'language and purpose.'" *Veasey v. Abbott*, 13 F.4th 362, 368 (5th Cir. 2021) (quoting *Davis*, 781 F.3d at 213 n.6).

3.     Congress' purpose in enacting 42 U.S.C. § 1988 is abundantly clear, and clearly applies here.  The reason § 1988 exists is:

> Courts have found that Congress wanted to assure private citizens a meaningful opportunity to remedy civil- and constitutional-rights violations by encouraging plaintiffs to serve as private-attorneys-general in effectuating the important objective of antidiscrimination. Thus, they have ruled that fees should be awarded to prevailing plaintiffs unless some special circumstances are shown that would make the award manifestly unjust.

10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2675.4 (4th ed.).

Congress did not want to leave citizens high and dry when they attempt to hold government officials accountable for violating civil rights.  Even successful litigation can be extremely expensive, and consequently many would-be litigants might often conclude that the costs outweigh the benefits of a lawsuit even if it results in the vindication of rights.  Anticipating that government officials might therefore conclude they could violate civil rights with impunity, Congress designed a statute to prevent such injustice.  The statutory

solution is found in § 1988, codifying Congress' policy choice on how lawmakers could

make vindicating federal rights a high priority.  The Fifth Circuit reasoned:

> In amending section 1988, Congress sought to remedy anomalous gaps in our civil
> rights laws created by [Supreme Court precedent].…[O]nly Congress, and not the
> courts, can specify which statutes are important enough to merit the allowance of
> attorneys' fees to the prevailing party under the "private attorney general" approach
> to enforcement.…
>
> It is intended that the standards for awarding fees be generally the same as under the
> fee provisions of the 1964 Civil Rights Act.  A party seeking to enforce the rights
> protected by the statutes covered by [§ 1988], if successful, should ordinarily
> recover an attorney's fee unless special circumstances would render such an award
> unjust.

*Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1977) (cleaned up).  Thus the "broad

purpose of the counsel fees provision is to *encourage* individuals injured by [unlawful]

discrimination to seek judicial relief."  *Id.* at 278 (emphasis added) (internal quotation

marks omitted).

4.     It would plainly frustrate Congress' purpose in § 1988 to hold that Plaintiffs

are not prevailing parties.  Congress *encouraged* Plaintiffs to bring this RFRA case.

Plaintiffs relied upon Congress' promise in filing suit.  As the authorities cited in Part II

show, if a person is protected by a preliminary injunction that opines that the plaintiff is

receiving that order because they have shown a substantial likelihood that they are correct

on the merits, that person becomes a prevailing party.  While a motion for a preliminary

injunction was pending before this Court for Plaintiffs, Dkt. 3, a sister court held that the

religious exemption denials from the Vaccine Mandate violated RFRA, and enjoined it.

*CFMO I*, 622 F. Supp. 3d at 1217.  In that same decision, the Middle District of Florida

certified a class to protect all religiously objecting Marines.  *See id.*  Congress then abolished this illegal mandate, and the Pentagon acted accordingly.

None of that should be allowed to vitiate Congress' purpose in § 1988 to encourage citizens to sue when the Federal Government is violating RFRA.  It is not consistent with Congress' purpose if Plaintiffs were to lose money because the Pentagon's action was so clearly illegal that another court ruled on the case before this Court could do so.  Quite the contrary, it serves Congress' purpose to regard "prevailing party" as a status that Plaintiffs continue to carry with them as they return to their original litigation, with their victory from the Middle District of Florida intact.

## II.   PLAINTIFFS ARE PREVAILING PARTIES BECAUSE THE PRELIMINARY INJUNCTION PROTECTING THEM OPINED ON THE MERITS OF THE RFRA CLAIM.

Plaintiffs are prevailing parties under 42 U.S.C. § 1988 because they brought suit to vindicate their federal rights, then received a preliminary injunction applied to a class of which they were members, a preliminary injunction that spoke directly to the merits of the case, holding that Defendants had violated RFRA.  The injunction was dissolved only after Defendants went into full retreat with such completeness that there was nothing left for the court to litigate on the merits, leaving only the issue of attorneys' fees.  Such a preliminary injunction conveys the status of "prevailing party" under § 1988.

Even though this case raised counts and claims for relief beyond those presented in *CFMO* (equal protection and an injunction barring the denial of promotions, respectively), this Court stayed this case because Defendants energetically assured this Court that Plaintiffs could receive full and complete relief in the Middle District of Florida regarding

everything they sought in this case.  Defendants even gave this Court assurances as to what would follow if their promises fell short:  "If, in contrast, the class-wide injunction in *Colonel FMO* is ultimately vacated, stayed, or otherwise lifted, Plaintiffs are not prejudiced in continuing to seek both individualized and class-wide injunctive relief at that time in this case."  Defs' Mot. Stay 5, Dkt. 15.  This Court accepted those assurances, agreeing with Defendants that *CFMO* "already provides Plaintiffs with all the relief they requested in this case."  Stay Order 3, Dkt. 25.

It turns out that Defendants were just kidding.  Despite assuring this Court that a stay would be "the fairest course for the parties," Defs' Mot. Stay 5, Dkt. 15, Defendants now try to argue with a straight face that it is fair for Plaintiffs who relied upon Congress' promise in § 1988 that prevailing plaintiffs can expect the government to pay their attorneys' fees to suddenly be told, "Oh sorry, you were right that the Pentagon violated RFRA, but because Defendants' actions were so egregiously illegal that another judge ruled first, you're out of luck even when you go back to your original judge."  Many words come to mind in response to such a statement, but "fair" is not one of them.

### A.  A preliminary injunction conveys prevailing party status when plaintiffs show a substantial likelihood of success on the merits.

Moreover, that statement does not comport with federal law.  Receiving a preliminary injunction that speaks to the legal merits of the case is sufficient to convey status as a prevailing party.  Both the Supreme Court and the Fifth Circuit make that sufficiently clear for this Court to award fees in this case.

12

To become a prevailing party, one "must achieve some judicially sanctioned relief that either creates or materially alters a legal relationship between the parties." *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013) (citing *Buckhannon Bd. & Care Home Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001)). By contrast, as the circuit court that would later review *CFMO* put it, "plaintiffs may not properly be considered to have vindicated a civil right as contemplated by Congress" in § 1988 when "they had no right to the relief sought and obtained." *Doe v. Busbee*, 684 F.2d 1375, 1382 (11th Cir. 1982). Plaintiffs here are fully entitled as a matter of right to the relief sought and obtained.

The standard is clear. To be a prevailing party, "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Petteway*, 738 F.3d at 137. Complete relief is not necessary to be a prevailing party; it is enough that a plaintiff receives "at least some relief on the merits." *Buckhannon*, 532 U.S. at 603.

According to the Fifth Circuit, moreover, "[a] plaintiff can satisfy these three requirements without receiving a final judgment in its favor, as long as the plaintiff's success on a claim is not purely technical or de minimis." *Veasey*, 13 F.4th at 368 (internal quotation marks and alterations omitted). Nor must a plaintiff's success "address the central claim of the case; instead, a party may attain prevailing status by succeeding on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* (internal quotation marks omitted). Nor must that success even be the final result. "[A] prevailing party is simply 'one who has succeeded on any significant

claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation.'" *Id.* at 368–69 (quoting *Davis*, 781 F.3d at 214). So long as a preliminary injunction thereby alters the relationship between the parties, Plaintiffs prevail. An order that materially alters the legal relationship between the parties is the "touchstone of the prevailing party inquiry … which Congress sought to promote." *Sole v. Wyner*, 551 U.S. 74, 82 (2007).

We are also told what does not constitute a prevailing party. A plaintiff is not a prevailing party if he obtains a preliminary injunction, but the court later in the case reverses course, issuing "a final decision on the merits denying permanent injunctive relief." *Id.* at 78. Additionally, a preliminary injunction that merely prevents irreparable harm by preserving the status quo, but does not opine on the merits, does not make the plaintiff a prevailing party. *Yousuf v. Motiva Enterprises LLC*, 246 F. App'x 891, 894–95 (5th Cir. 2007) (per curiam). The same goes if the purported success in the case is "purely technical or de minimis." *Petteway*, 738 F.3d at 137. But relief is not technical or de minimis if it benefits a plaintiff. *Veasey*, 13 F.4th at 369.

**B. *CFMO* included such a preliminary injunction that covered Plaintiffs.**

That is precisely how Plaintiffs here can be described, because *CFMO* issued a preliminary injunction that satisfies these criteria. RFRA provides that a substantial burden on religious faith can be sustained only if it "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. *CFMO I* begins by quoting that standard, citing the body of Supreme Court and appellate precedent showing how demanding that

14

strict scrutiny standard truly is.  *CFMO I*, 622 F. Supp. 3d at 1209.  The court then goes on to explain just how completely Defendants fail under that standard.  *Id.* at 1209–14.

None of the district court's reasoning was open to reexamination in subsequent proceedings.  The merits determination was full-fledged and cited to the evidentiary record.  The class "succeeded on [a] significant claim affording it some of the relief sought."  *Veasey*, 13 F.4th at 368 (quoting *Davis*, 781 F.3d at 214).  The preliminary injunction "materially alter[ed] a legal relationship between the parties."  *Petteway*, 738 F.3d at 137 (citing *Buckhannon*, 532 U.S. at 604).  The relief was not technical or de minimis.  The class prevailed, and that class included Plaintiffs.  "Far from leaving the courthouse empty-handed, Plaintiffs won on a significant issue in the litigation which achieved some of the benefit they sought in bringing suit."  *Veasey*, 13 F.4th at 371 (cleaned up).  It does not matter that the courthouse was in Tampa instead of Galveston.

### C. Class members are "parties" and should not be deprived of attorneys' fees because parallel litigation reached the desired result before this Court could act.

In this regard, members of a class are also parties to litigation.  In many respects, "Rule 23 class members become party to the litigation through no action of their own, and are bound by its results."  *Hernandez v. Robert Dering Constr., LLC*, 191 F. Supp. 3d 675, 680 (S.D. Tex. 2016) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).

The Supreme Court, moreover, has reasoned through how class members are parties in various aspects of a case, explaining:

Nor does considering nonnamed class members parties for the purposes of bringing an appeal conflict with any other aspect of class action procedure.… Nonnamed class members … may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context.

Nonnamed class members are, for instance, parties in the sense that the filing of an action on behalf of the class tolls a statute of limitations against them.… What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement. It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing. To hold otherwise would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court.

*Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002) (citations omitted).

The Sixth Circuit affirmed a district court's judgment that a party's win in parallel litigation can make them a prevailing party for purposes of § 1988. Considering the constitutionality of a statute when the party also challenged that statute in Ohio state court, in which the state court struck down the statute before the federal court reached a decision, the district court held:

While it may be true that law enforcement personnel discontinued enforcement of this statute upon the issuance of the Ohio Supreme Court's opinion in [the state case], the question of the constitutionality of the statute was before this Court and the Ohio Supreme Court simultaneously. *The mere fact that the Ohio Supreme Court's opinion was issued before this Court's judgment does not change the Plaintiffs' status as a prevailing party for purposes of 42 U.S.C. § 1988.*

Had this Court issued its judgment before the Ohio Supreme Court issued [its own judgment], there would be no question as to whether the Court's judgment materially altered the legal relationship of the parties—law enforcement personnel would have been forced to cease enforcement of the unconstitutional statute. *This Court will not allow the timing of the issuance of the Court's order to negate the status of Plaintiffs as "prevailing parties," which in turn, might disallow an award of fees and costs.* For the Court to so hold would discourage counsel from accepting cases seeking declaratory judgment and injunctive relief involving the enforcement

16

of alleged unconstitutional state statutes when the same issues are being litigated in the state courts. Such a result would not be in keeping with the interest that Congress sought to promote in the fee statute.

> *The fact that others were engaged in parallel efforts to declare the statute unconstitutional in the state courts and prevailed first does not detract from the effort of the attorneys in trying this case in federal court.* Litigation such as this challenging the constitutionality of state statutes can take years, and *parallel efforts* in state and federal courts *should not be discouraged. These parallel efforts would be strongly discouraged if one party's attorneys would be deprived of a statutory award of attorney's fees based merely on the fortuitous timing of the two courts' judgments.*

*Putnam v. Davies*, 960 F. Supp. 1268, 1273 (S.D. Ohio 1997) (emphases added). Note that the Southern District of Ohio looked to Congress' purpose in § 1988, precisely as the Fifth Circuit instructs this Court to do, and reasoned in awarding fees that to deny attorneys' fees could discourage illegally injured citizens from filing suit for fear of litigation costs. Parallel efforts should not be discouraged, and disallowing fees would discourage injured persons from seeking to file suit, as well as discourage counsel from undertaking such representation.

The Sixth Circuit agreed. On appeal, the Sixth Circuit discussed the district court's analysis with approval, reasoning:

> Although the "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim," *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 480 (1990), were this court to permit Defendants' voluntary cessation of their allegedly illegal activity to moot Putnam's claim, and thereby deprive her of the opportunity to receive any attorneys fees, it "would discourage counsel from accepting cases seeking declaratory judgment and injunctive relief involving the enforcement of alleged unconstitutional state statutes when the same issues are being litigated in the state courts."

17

*Putnam v. Davies*, 149 F.3d 1184, 1998 WL 344075, at *4 n.5 (6th Cir. May 26, 1998) (unpublished table decision) (some internal quotation marks omitted).

Yet another persuasive authority comes from the D.C. Circuit. In *Lundin v. Mecham*, six bankruptcy judges were parties in a case over the constitutionality of the Bankruptcy Amendments and Federal Judgeship Act of 1984. *Lundin v. Mecham*, 980 F.2d 1450, 1452 (D.C. Cir. 1992). The case had been dismissed as moot four years earlier, but in the interim, other parties filed cases in other federal courts involving the same or related issues. The *Lundin* plaintiffs intervened or filed *amicus* briefs in the other lawsuits. They sought Equal Access to Justice Act fees—which has the same test as § 1988 for prevailing-party status, *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983)—both for the *Lundin* suit and the other cases. *Lundin*, 980 F.2d at 1452–53. Although the D.C. Circuit held that the plaintiffs were entitled to fees only in their own case and not in the related cases, the court explained that the plaintiffs could be considered prevailing parties in their case based in part on what happened in the other cases. The D.C. Circuit reasoned:

> If the Government were satisfied that there was no infirmity in the judges' appointments, it would have been incongruous for it to have intervened in the related cases. The lesson, in fact, from the Government's continued efforts to litigate these issues is that the Six Judges *were not* safe in relying upon [the Government Director's position]. If the Department of Justice had again pressed the issue, the Director might have again succumbed and withheld the judges' salaries. And if the Department of Justice had prevailed in any of the related cases, the Director likely would have newly revoked the Six Judges' salaries. Thus, there is no basis for a finding that the Director's motion to dismiss signaled the beginning of the end of the dispute. Rather, until the constitutionality of the Bankruptcy Act and the validity of the bankruptcy judges' appointments had been firmly established, the Director's July 20 Memorandum was impotent to resolve the controversy between the parties. As we understand the character of the proceedings below, *the District Court stayed the suit and delayed ruling on the Director's motion to dismiss precisely because legal issues critical to the case remained to be resolved—either in the*

*District of Columbia or elsewhere. It was reversible error, therefore, for the District Court to exclude the litigation of the related cases from consideration in deciding whether the Six Judges prevailed below.*

Given, then, that the related cases must be factored into the causation calculus, we are convinced that the Director's ultimate capitulation was fundamentally a product of those cases in which the Six Judges' position was uniformly vindicated. Once the issues had been resolved in the related cases, it became impossible for the Director to believe that he might successfully defend against the Six Judges' action in the District of Columbia, and he readily agreed to the dismissal of the case. The dismissal, though putatively based on mootness due to the Director's July 20 Memorandum, was in actuality founded upon the efforts of the Six Judges, both in prosecuting the suit below and in assisting in the defense of the Bankruptcy Act in the related cases. Hence, we are satisfied that the Six Judges were the prevailing party in the suit below.

*Id.* at 1458–59 (emphasis added).

These cases show other circuits interpreting § 1988 broadly to effectuate Congress' purpose, which is what *Veasey* likewise instructs this Court to do here. That purpose is to encourage citizens to sue for violations of federal rights, confident that if their rights are indeed being violated it will be the government that bears the cost, not the aggrieved citizen. There is no carve-out for violations that are so widespread that they precipitate multiple competing class-action suits, each seeking to protect every member of the aggrieved class. It would flatly violate Congress' manifest purpose to say that multiple attempts to stop Defendants' violations of civil rights leads to the perverse result that illegally injured citizens are deprived of the very financial relief that § 1988 was enacted to provide them.

### III. THE FIFTH CIRCUIT LIKEWISE DETERMINED THAT THE PENTAGON VACCINE MANDATE VIOLATED RFRA, JUSTIFYING A PRELIMINARY INJUNCTION.

Nor does this Court need to rely upon the legal conclusions of the Middle District

of Florida.  The Vaccine Mandate at issue in this case is merely the service branch-specific implementation of a directive from the Secretary of Defense to all uniformed components of the Department of Defense.  *See* Compl. ¶¶ 35–44, Dkt. 1; Pls.' Mot. TRO & Prelim. Inj. 5–8, Dkt. 3.   Predictably, there was also litigation involving other branches' implementation of the Pentagon's Vaccine Mandate.  And the Fifth Circuit has already spoken regarding one such implementation, determining that the denial of religious exemptions from the Vaccine Mandate violates RFRA.

The first successful challenge to the Pentagon's Vaccine Mandate was the Navy's, filed in the Northern District of Texas.  *U.S. Navy SEALs 1–26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022) (*Seals I*).  In a thorough opinion, Judge O'Connor determined that the Navy SEALs there had shown a substantial likelihood of ultimate success on their claim that the Vaccine Mandate violated RFRA in denying religious exemptions.  *Id.* at 835–37. The court also held that the denials violated the Free Exercise Clause, holding that the mandate triggered strict scrutiny because it treated religious exemption requests less favorably than medical (i.e., secular) exemption requests, and that the denials failed strict scrutiny.  *Id.* at 837–38 (quoting *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021); *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam)).  The district court then issued a preliminary injunction against the Vaccine Mandate.  *Id.* at 840.

The Fifth Circuit denied Defendants' motion to stay that injunction.  *U.S. Navy SEALs 1–26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) (per curiam) (*Seals II*).  One of the factors the Fifth Circuit considered in denying the stay is whether the applicants were likely to succeed on the merits.  *Id.* at 349–50 (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)).

The Fifth Circuit affirmed the trial court's conclusion that exemption denials from the Navy's materially indistinguishable Vaccine Mandate likely violated RFRA. *Id.* at 350–52.

Subsequently, the Northern District of Texas certified a Navy-wide class consisting of all religiously objecting sailors. *U.S. Navy SEALs 1–26 v. Austin*, 594 F. Supp. 3d 767, 789 (N.D. Tex. 2022) (*Seals III*). Continuing to parallel actions that would later be taken by *CFMO*, the district court reaffirmed that these denials violate RFRA. *Id.* at 788.

The case was pending on appeal on all these issues when Congress ordered the Vaccine Mandate abolished. The Fifth Circuit has already found that federal "courts have halted the military's recent attempts to force servicemembers … to receive COVID-19 vaccines against their sincere religious objections." *U.S. Navy SEALS 1–26 v. Biden*, 72 F.4th 666, 669 (5th Cir. 2023) (collecting cases) (*Seals IV*). It was only "[a]fter entry of those injunctions" that "Congress ordered the military branches to rescind their mandates." *Id.*[5] The Fifth Circuit rejected arguments by Secretary Austin and Secretary Del Toro, who are two Defendants here, to vacate the Fifth Circuit's panel decision denying a stay of a preliminary injunction the Northern District of Texas issued against an identical Vaccine Mandate imposed upon Navy servicemembers. *Id.* at 675.

So *Seals II* continues to be good law, and is controlling. And because *Seals IV* dismissed the appeal as moot but did not vacate the district court opinions or order the

---

[5] *See* James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571–72 (2022).

dismissal of the district court case as moot—the case is still continuing in the Northern District of Texas—*Seals I* and *Seals III* continue to be good law as well, albeit persuasive authority.  In all those opinions, the determinations that the Pentagon had violated RFRA centered on Secretary Austin's directive, not the Navy's branch-specific implementation of the Secretary's order.  Thus, these opinions are directly on point here, and are consistent with *CFMO I*'s conclusion that denying religious exemptions from Marines Vaccine Mandate violates RFRA.

In conclusion then, controlling precedent from the Fifth Circuit holds that the underlying Vaccine Mandate at issue here violates RFRA in its treatment of religious exemptions, and strongly suggests that the Marines' implementation of that mandate is as infirm as the Navy's.  While no controlling precedent directly dictates that these cases compel this Court to designate Plaintiffs as prevailing parties under  42 U.S.C. § 1988, *Seals I*, *II*, and *III*, conjoined with *CFMO I*, should leave this Court with no doubt that Plaintiffs are indeed prevailing parties, and as such are entitled to attorneys' fees.

## IV.  PLAINTIFFS SHALL CONFER WITH OPPOSING COUNSEL TO DETERMINE THE TOTAL AMOUNT DUE.

Once this Court confirms that Plaintiffs were prevailing parties after *CFMO* certified Plaintiffs in its class, it should award fees for the hours that Plaintiffs' counsel devoted to this matter. Plaintiffs request a "fair estimate" of fees in the amount of $287,790 and costs of $596, for a total of $288,578, before *CFMO I* was decided, *see*, *e.g.*, *S. Tex. Elec. Coop. v. Dresser-Rand Co.*, No. CIVA V-06-28, 2010 WL 1855959, at *2 (S.D. Tex. May 5, 2010), to later be updated to include the time and effort expended as this stage of

litigating over attorneys' fees, *Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) (holding that "prevailing parties are entitled to attorney's fees under § 1988 for time spent establishing and litigating a fee claim as well as for time spent prosecuting the merits of the civil rights action").  Plaintiffs arrived at this estimate by using the lodestar method, adjusted for the twelve *Johnson* factors, *see Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989) (contingent-fee agreements issue), including the lapse of time since payments were made and costs were incurred, *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 773 (5th Cir. 1996).

Plaintiffs believe the issue of fees and costs will be straightforward once this Court holds that Plaintiffs are prevailing parties for purposes of § 1988, and so may not require additional action by this Court.  Fed. R. Civ. P. 54(d)(2)(B)(iii) requires a motion for fees to "state the amount sought or provide a fair estimate of it."  *See S. Tex. Elec. Coop.*, 2010 WL 1855959, at *2 ("Rule 54 only requires the party requesting attorneys' fees to provide a 'fair estimate' of its fees.").  Otherwise stated, "the rule does not require that the motion be fully supported at the time of filing by all of the evidentiary material bearing on fees." 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2680 (4th ed.).  Rather than burden this Court with exhibits and adjustment factors at this stage, Plaintiffs rest upon the estimate, as there is a fair prospect that Defendants' counsel will find Plaintiffs' specific calculations typical once the Court informs Defendants that they are liable under § 1988 here.  As the Advisory Committee Notes confirms:

> The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees and the amount of such fees (or a fair estimate.)

FED. R. CIV. P. 54 ADVISORY COMM. NOTES TO 1993 AMENDMENT (subdiv. (d), ¶ 2); *see also United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 765 (5th Cir. 1996) (regarding this Committee Note as weighty authority).

Given that Defendants are contesting the applicability of § 1988 to Plaintiffs rather than the amount owed, once this Court determines that fees are available, Plaintiffs shall request precise fees and costs by conferring with counsel for Defendants to discuss the calculation of the total amount. If that conference proves unsuccessful, Plaintiffs will promptly file a petition for fees with this Court, accompanied by appropriate evidence.

## CONCLUSION

This Court should set this Motion for oral argument. Following that hearing, for the reasons discussed above, the Court should grant the Motion by holding that Plaintiffs are prevailing parties under 42 U.S.C. § 1988, and order the parties to confer in good faith regarding the amount due to Plaintiffs.

August 10, 2023                                 Respectfully submitted,

                                                */s/ Kenneth A. Klukowski*
                                                Gene C. Schaerr*
                                                  D.C. Bar No. 416368
                                                Kenneth A. Klukowski
                                                  D.C. Bar No. 1046093
                                                  S.D. Texas Bar No. 3145314
                                                Annika B. Barkdull* **
                                                  Utah Bar No. 17176
                                                SCHAERR | JAFFE LLP
                                                1717 K Street NW, Suite 900
                                                Washington, DC 20006
                                                Telephone: (202) 787-1060
                                                Facsimile: (202) 776-0136
                                                kklukowski@schaerr-jaffe.com

                                                *Counsel for Plaintiffs*

                                                * admitted *pro hac vice*
                                                ** Not yet admitted in D.C. Practicing
                                                under the supervision of D.C. attorneys.

## CERTIFICATE OF CONFERENCE

I conferred via email with counsel for Defendants several times, most recently on August 7, 2023.  This briefing schedule was set because agreement could not be reached on the relief sought, so the foregoing Motion is accordingly presented to this Court as opposed.

*/s/ Kenneth A. Klukowski*
Kenneth A. Klukowski
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

On August 10, 2023, I filed the foregoing document with the clerk of court for the United States District Court for the Southern District of Texas.  I hereby certify that I have served the document on all counsel and/or pro se parties of record by manner authorized by Federal Rule of Civil Procedure 5(b)(2) (ECF system).

*/s/ Kenneth A. Klukowski*
Kenneth A. Klukowski
*Counsel for Plaintiffs*
