# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | |
|---|---|
| JASON C. SCHNEIDER, individually and on behalf of all others similarly situated, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> LLOYD J. AUSTIN, III, in his official capacity as United States Secretary of Defense, *et al.*, <br><br> *Defendants*. | Case No: 22-293 |

**PLAINTIFFS' REPLY SUPPORTING ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

    I.    DEFENDANTS IGNORE CONTROLLING AUTHORITY AND DO NOT ENGAGE PLAINTIFFS' KEY POINTS. ........................................................................... 1

    II.   PLAINTIFFS' ESTIMATE IS FAIR AND DOES NOT REQUIRE EVIDENCE. ............... 6

CONCLUSION ........................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977) .......................................................... 1, 5

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
    532 U.S. 598 (2001) .................................................................................................... 2

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*,
    51 F.4th 616 (5th Cir. 2022) ....................................................................................... 5

*Colonel Financial Management Officer v. Austin*,
    622 F. Supp. 3d 1187 (M.D. Fla. 2022) (*CFMO*), *appeal docketed sub nom.
    Chief Warrant Officer 4 v. Secretary of the United States Department of
    Defense,* No. 22-13522 (11th Cir. Oct. 18, 2022) ...................................................... 4

*Davis v. Credit Bureau of the S.*, 908 F.3d 972 (5th Cir. 2018) .......................................... 8

*Dean v. Harris Cnty.*, No. H-13-73, 2013 WL 2452673 (S.D. Tex. June 5, 2013) ............ 6

*Gezu v. Charter Commc'ns*, 17 F.4th 547 (5th Cir. 2021) .................................................. 6

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ................................ 9

*Newman v. Piggie Park Enters.*, 390 U.S. 400 (1968) ..................................................... 1, 3

*Petteway v. Henry*, 738 F.3d 132 (5th Cir. 2013) ............................................................... 1

*Putnam v. Davies*, 960 F. Supp. 1268 (S.D. Ohio 1997),
    *aff'd*, 149 F.3d 1184 (6th Cir. 1998) ........................................................................... 4

*Sambrano v. United Airlines, Inc.*,
    No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022) ....................................... 10

*Tex. All. for Retired Ams. v. Hughes*, 489 F. Supp. 3d 667 (S.D. Tex. 2020),
    *rev'd in part on other grounds sub nom. Tex. All. for Retired Ams. v. Scott*,
    28 F.4th 669 (5th Cir. 2022) ....................................................................................... 6

*U.S. Navy Seals 1–26 v. Biden*, 27 F.4th 336 (5th Cir. 2022) ............................................ 5

*Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199 (5th Cir. 2023) ............................... 3

*Veasey v. Abbott*, 13 F.4th 362 (5th Cir. 2021) .................................................................. 1

**Other Authorities**

Jim Garamone, *Biden Signs National Defense Authorization Act Into Law*,
    U.S. Dep't of Def. (Dec. 23, 2022) .............................................................................. 6

S. Rep. No. 94-1011 (1976) ............................................................................................ 3, 5

Plaintiffs respectfully submit this Reply to Defendants' Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs, Dkt. 34.

## I. DEFENDANTS IGNORE CONTROLLING AUTHORITY AND DO NOT ENGAGE PLAINTIFFS' KEY POINTS.

It is telling that Defendants never cite *Veasey v. Abbott*, 13 F.4th 362 (5th Cir. 2021). *Veasey* is the single most-cited case in Plaintiffs' opening brief, being cited seven times. *See* Dkt. 31 at 9, 13 (twice), 14 (twice), 15 (twice). It supplies the rule of decision that Plaintiffs urge this Court to apply. Decided by the Fifth Circuit in 2021, it is the most recent controlling case on how to interpret "prevailing party" in 42 U.S.C. § 1988. And *Veasey*'s holding that courts must interpret that term to effectuate Congress's purpose, *see Veasey*, 13 F.4th at 368, is the core of Plaintiffs' presentation. The reason Defendants ignore the elephant in the room is obvious: *Veasey* is devastating to Defendants' position, and they cannot talk around it.

*Veasey* holds that this Court must look both to § 1988's language and to Congress' purpose in defining "prevailing parties." *Id.* The Fifth Circuit has also held that Congress' purpose is "broad" and is to "encourage" private citizens to seek vindication of civil rights by filing § 1988-eligible lawsuits. *Brown v. Culpepper*, 559 F.2d 274, 278 (5th Cir. 1977) (quoting *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968)). And the Fifth Circuit test is framed in terms of parties receiving judicial relief, not which court granted that relief to Plaintiffs seeking fees. *See Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013).

Defendants do not engage these points. Defendants instead attempt to fashion a rule from other circuits, one that Defendants would have this Court apply in a manner

inconsistent with Fifth Circuit precedent. They point to one case from the Fourth Circuit and another from the Eleventh Circuit, neither of which discusses Congress' purpose in § 1988, and therefore does not interpret § 1988 properly. *See* Dkt. 34 at 5–6.

Speaking of that purpose, Defendants also never respond to Plaintiffs' showing regarding Congress' purpose in § 1988. The Supreme Court treated both the House Report and the Senate Report on the Civil Rights Attorney's Fees Act as authoritative in interpreting § 1988. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 607–08 (2001). Per *Buckhannon*, these reports set forth Congress' purpose, which *Veasey* requires this Court to effectuate in defining "prevailing party." Consistent with the caselaw Plaintiffs provided in their opening brief—language that Defendants do not attempt to rebut or distinguish—Congress explained as its purpose for § 1988:

- At *2: "In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court."

- At *3: "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the Federal courts."

- At *3: "The remedy of attorneys' fees has always been recognized as particularly appropriate in the civil rights area, and civil rights and attorneys' fees have always been closely interwoven. In the civil rights area, Congress has instructed the courts to use the broadest and most effective remedies available to achieve the goals of our civil rights laws."

- At *4: "A party seeking to enforce the rights protected by the statutes covered by S. 2278, if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" (quoting *Piggie Park*, 390 U.S. at 402).

- At *6: If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

S. Rep. No. 94-1011 (1976). As recently as this year, the Fifth Circuit cited this Senate Report as weighty authority. The court held that a civil rights statute's "fee-shifting mechanism should not function to deter civil rights plaintiffs," *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 204 (5th Cir. 2023), and then quoted the Senate Report in support, *id.* at 204 n.16.

Defendants' halfhearted suggestion that the cases Plaintiffs rely upon are inconsistent with *Buckhannon* gets them nowhere. *See* Dkt. 34 at 4–5. *Buckhannon* was decided in 2001. The controlling Fifth Circuit cases that Plaintiffs principally rely upon were handed down in 2003, 2015, and 2022. *See* Dkt. 31 at 8, 9, 13, 14, 15. They are all good law, yet Defendants offer no rationale why those cases' reasoning is not binding on the issue on this case.

If anything, Defendants' survey of circuit cases outside the Fifth Circuit is misleading. *See* Dkt. 34 at 3–6. The cases they cite that involve class actions do not involve § 1988 attorneys' fees. And the cases that involve § 1988 do not involve class actions. Yet another case that they quote heavily—from the Ninth Circuit—involves *neither* class actions *nor* § 1988. None of these cases directly engages Plaintiffs' showing as to why it is entirely consistent with Congress' purpose for class members in a § 1988-

3

eligible case who began in their own lawsuit, later became part of someone else's class, and received the benefits of a RFRA merits ruling while part of the class—which conveys prevailing party status—should then receive the benefits of § 1988 which they relied upon when they filed their RFRA lawsuit. Defendants offer no contrary on-point authority because they have none.

Nor does Defendants' "catalyst theory" point get them anywhere, even if the cases they cited were controlling here. *See* Dkt. 34 at 4–5. For example, the Sixth Circuit's *Putnam* case is not a catalyst theory case by any stretch, so Plaintiffs' discussion of it is confusing at best. *Cf. Putnam v. Davies*, 960 F. Supp. 1268 (S.D. Ohio 1997), *aff'd*, 149 F.3d 1184 (6th Cir. 1998) (unpublished table decision). But evidently pointless citations to non-binding cases are the best Defendants could find, which is why their brief is barely 13 pages long instead of the 30 pages they are allowed under this Court's rules.

Defendants' Response is also noteworthy for the many points they do not attempt to refute—which again, given the brevity of their brief—is not because they ran out of space. They do not discuss their prior assurance that Plaintiffs could return for *any* relief they did not receive from *Colonel Financial Management Officer v. Austin*, 622 F. Supp. 3d 1187 (M.D. Fla. 2022) (*CFMO*), *appeal docketed sub nom. Chief Warrant Officer 4 v. Secretary of the United States Department of Defense,* No. 22-13522 (11th Cir. Oct. 18, 2022), or that attorneys' fees was one such relief Plaintiffs sought here. Dkt. 31 at 4. They do not acknowledge that this Court explicitly relied upon their assurance when issuing a stay. Stay Order 3, Dkt. 25. When the Supreme Court held that class members are parties for some "purposes" but not others, *id.* at 16—the operative word in *Veasey*—Defendants

4

do not argue why class members belong in the non-party category for attorneys' fees purposes. They do not deny that there are prevailing parties in *CFMO*, that Plaintiffs here sought the relief that they later received, that Plaintiffs were covered by an injunction that would normally designate them as prevailing parties, or that the Fifth Circuit had reached the same conclusion as *CFMO* that denying military servicemembers exemptions from the Pentagon's Vaccine Mandate violates RFRA.

With no directly on-point controlling authority, under *Veasey* and the congressional policies discussed above, this Court should hold that Plaintiffs are prevailing parties. To exclude from that definition class members who were covered by the *CFMO* preliminary injunction would frustrate Congress' purpose. And it is worth noting that Congress controls the purse strings. *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 639 (5th Cir. 2022). Congress—which required the rescission of the unlawful Vaccine Mandate challenged by Plaintiffs here—is the same branch of government that codified a public policy of encouraging citizens to sue as private attorneys general, *Brown*, 559 F.2d at 277, the same branch that promised private citizens that they should not be stuck with the bill when the government violates their civil rights, *see* S. Rep. No. 94-1011, at *2–3, and the same branch that codified the religious liberty protections at issue in RFRA, which is a "super statute, displacing the normal operation of other federal laws," *U.S. Navy Seals 1–26 v. Biden*, 27 F.4th 336, 346 (5th Cir. 2022) (internal quotation marks omitted). If litigation is mooted by happenstance, then of the two sides of the "V" that may face a risk of loss, Congress' purpose does not counsel in favor of middle-income servicemembers bearing the loss instead of the bottomless coffers of the United States

Government. To the contrary, Congress' purpose—as well as the statute's plain language—militates in favor of designating the Marines who are Plaintiffs here as prevailing parties, and Defendants offer no authority to the contrary.

## II. PLAINTIFFS' ESTIMATE IS FAIR AND DOES NOT REQUIRE EVIDENCE.

Contrary to Defendants' argument, moreover, Plaintiffs here seek reimbursement, not "windfalls." Defendants complain that Plaintiffs' legal bills are "grossly excessive." Dkt. 34 at 7. But that is rich, coming from the Pentagon with its $816.7 billion annual budget.[1] Plaintiffs here are United States Marines who personally gave $96,520 sacrificially to defray litigation costs. Decl. of Sarah Norton ¶ 5, Ex. 1.[2] To middle-income and working-income Marines wearing the uniform of this Nation, that is real money. Getting their money back is not a windfall; it is what they deserve.

This determination *not* to seek windfalls is one reason why Plaintiffs are seeking an order for a conference with Defendants, instead of seeking a specific order for $287,790 in fees and $594.86 in costs. While Plaintiffs' counsel are attorneys at a for-profit law firm

---

[1] *See* Jim Garamone, *Biden Signs National Defense Authorization Act Into Law*, U.S. Dep't of Def. (Dec. 23, 2022), https://www.defense.gov/News/News-Stories/Article/Article/ 3252968/biden-signs-national-defense-authorization-act-into-law.

[2] It is proper under Local Rules 7.1(f) and 7.8 to include forms of evidence such as declarations as exhibits to a reply brief if it is to rebut points raised for the first time in a non-movant's response. *Gezu v. Charter Commc'ns*, 17 F.4th 547, 556 n.9 (5th Cir. 2021); *Tex. All. for Retired Ams. v. Hughes*, 489 F. Supp. 3d 667, 694 (S.D. Tex. 2020), *rev'd in part on other grounds sub nom. Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669 (5th Cir. 2022); *Dean v. Harris Cnty.*, No. H-13-73, 2013 WL 2452673, at *10 (S.D. Tex. June 5, 2013). Because evidence was not required with the opening brief in this Motion when Plaintiffs are providing an estimate, for the reasons Plaintiffs explained, Dkt. 31 at 22–24, it is proper to accept this evidence now to rebut Defendants' meritless argument.

6

and certainly hope to make a reasonable compensation, counsel would be content if they can reclaim at least $96,520 for Plaintiffs so Plaintiffs are not out-of-pocket for trying to save their careers and stand on religious principle when Defendants were trampling their rights—and doing so with a less-than-honorable discharge, which would adversely affect Plaintiffs' future employment prospects. Dkt. 3 at 21.

The fees are certainly not excessive in any event. Plaintiffs had to interview many Marines to develop this case. Of the many with which counsel made contact, fourteen were named as Plaintiffs. Extensive interviews were necessary to craft more than a dozen declarations. The Department of Defense is a byzantine bureaucracy, with policy documents of great length, written in its own opaque vernacular. Plaintiffs' counsel waded through a mountain of documents dispersed in a labyrinthine configuration to draft the Complaint and the Motion for Preliminary Injunction in this case. *See* Dkts. 1, 3. As seen in those filings, the Secretary of Defense (SecDef) issued the overall Vaccine Mandate. Dkt. 3 at 5 & n.4, 6, 12. The Secretary of the Navy (SecNav) then developed his own specific instructions. *Id.* at 6 & n.7, 12 n.11. The Commandant of the Marine Corps then issued his own dense implementation package, *id.* at 6, written in what is for all practical purposes a foreign language to civilian attorneys. All this had to be integrated with the general religious liberty policy issued by the Under Secretary of Defense for Personnel and Readiness (USD (P&R)). *Id.* at 25–26 & n.19. And additional regulations applied to Plaintiffs in such a situation. *See* Dkt. 1 ¶¶ 44–50. Each Plaintiff had to fill out forms and requests for a religious exemption, each of which involved interviewing with a military chaplain, receiving endorsements from supervisors and commanders, and favorable

7

recommendations up the chain of command. *See id.* ¶¶ 51–134. The facts of each Plaintiff profile were examined to determine which ones were suitable Plaintiffs for this challenge, studying each page of the foregoing material for each prospective Plaintiff. Relevant facts needed to be specified in each declaration. Beyond that, all of that information needed to be arranged in a fashion to meet the stringent requirements of Rule 23 for class actions, in addition to translated into an argument for preliminary relief. All of this work needed to be completed, revised, and confirmed before this suit could be filed. Plaintiffs' counsel worked efficiently, as will be clear after this Court holds that Plaintiffs are prevailing parties and itemized timesheets are submitted to Defendants.

In that regard, Defendants' reliance upon *Davis v. Credit Bureau of the S.*, 908 F.3d 972, 981 (5th Cir. 2018) is a scarecrow. *See* Dkt. 34 at 9–11. There is no need for any subsequent major litigation, because Plaintiffs assume at this stage that Defendants will be reasonable at conference once this Court instructs them that they are liable for fees. The fact that this litigation was live for a matter of weeks before all Marines were effectively represented in the *CFMO* class action, Dkt. 34 at 11, is irrelevant to a fees-eligibility analysis. All that matters is that Plaintiffs are considered prevailing parties because they benefited from a preliminary injunction that held the Vaccine Mandate likely violates RFRA. If so, then Defendants are liable for fees for the time and effort Plaintiffs' counsel properly spent on the matter. How long Plaintiffs' litigation was live is only relevant for the timeframe in which Plaintiffs' can recover attorneys' fees, not for whether Plaintiffs are eligible at all.

Relatedly, there is also the question of which hours should be counted. Is it only for hours logged through the day when *CFMO* certified in the class? Should it also include the hours immediately following when this Court accepted briefing and held a hearing on whether to stay this case versus allowing the additional issues raised in this case to be litigated? And when did the timer begin again for the current stage of seeking fees? These questions are not answered by controlling precedent, so Plaintiffs provided an estimate.[3]

Moreover, for these hours—totaling 370.0 attorney hours and 71.0 hours of support staff work as of the conclusion of the most recent billing cycle—there should be a conference with opposing counsel regarding the Fifth Circuit's twelve *Johnson* factors. *See* Dkt. 31 at 23 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). Plaintiffs expect needing to confer with Defendants regarding whether the baseline billing rates should be determined by the Texas State Bar's Hourly Fact Sheet, the ALM Survey of Law Firm Economics, the *Laffey* Matrix, the USAO Attorney's Fees Matrix, or some other source, to determine appropriate billing rates for Washington, D.C. attorneys litigating against federal agencies but doing so in the Southern District of Texas.

Finally, there are the credentials of the attorneys representing Plaintiffs. Take for example Gene Schaerr, the partner managing this case. Mr. Schaerr is a 1986 graduate of Yale Law School. He clerked for Judge Kenneth Starr on the U.S. Court of Appeals for

---

[3] Defendants are not being forthcoming saying that Plaintiffs on June 2, 2023, rejected an invitation to request fees. *See* Dkt. 34 at 9 n.2. Instead, Plaintiffs concluded a lengthy exchange by offering on July 6 to discuss the issue by phone and submit a proposal. It was Defendants who balked at resolving this question amicably, saying Plaintiffs should instead come to this Court for briefing. That exchange is attached as Exhibit 2.

9

the D.C. Circuit and Chief Justice Warren Burger and Justice Antonin Scalia on the Supreme Court of the United States. He later served as Associate Counsel to the President in the White House of President George H.W. Bush. He has been a partner at major law firms for most of the intervening three decades, and has argued seven cases before the Supreme Court, in addition to numerous arguments in federal and state trial and appellate courts. He has had extensive successful litigation experience in the areas of law relevant to this case, both generally and in the context of Covid vaccine mandates. For one such recent example, Mr. Schaerr won preliminary relief at the Fifth Circuit in a class action for 2,200 employees who were losing their jobs because of religious objections to taking a Covid vaccine, which the Fifth Circuit held violated Title VII. *See Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022). Mr. Schaerr's base billing rate of $1,400 per hour—listed on the timesheets in this litigation—is less than many would expect for these world-class credentials. Should this Court hold that Plaintiffs are eligible for fees, full biographical information for each attorney on the case will be provided to justify their billing rates.

Because the eligibility of attorneys' fees under these circumstances is a question of first impression for this Court, and given the complexity of each of these five issues and lists of criteria set forth above, the complex and fact-intensive calculation of what constitutes reasonable fees should be attempted in the first instance by conferring with opposing counsel on each of these items, rather than asking this Court to develop a comprehensive rule addressing all of the above.

## CONCLUSION

For these reasons, and for those provided in Plaintiffs' opening brief, this Court should grant the Motion for Attorneys' Fees and Costs, holding that Plaintiffs are prevailing parties because of the preliminary injunction applies to them, and order Defendants to confer with Plaintiffs in good faith to determine a reasonable amount.

September 14, 2023                                      Respectfully submitted,

/s/ Kenneth A. Klukowski
Gene C. Schaerr*
  D.C. Bar No. 416368
Kenneth A. Klukowski
  D.C. Bar No. 1046093
  S.D. Texas Bar No. 3145314
Annika M. Boone* **
  Utah Bar No. 17176
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
Facsimile: (202) 776-0136
kklukowski@schaerr-jaffe.com

*Admitted *pro hac vice*
**Not yet admitted in D.C. Practicing under the supervision of D.C. attorneys.

*Counsel for Plaintiffs*

11

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2023, the foregoing document was filed through the Court's ECF system and a copy will be served on each of the Defendants according to the Federal Rules of Civil Procedure.

September 14, 2023

*/s/ Kenneth A. Klukowski*
Kenneth A. Klukowski